## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVISION

EMW WOMEN'S SURGICAL CENTER, P.S.C., on behalf of itself, its staff, and its patients; ERNEST MARSHALL, M.D., on behalf of himself and his patients
136 West Market Street
Louisville, KY 40202

        Plaintiffs,

    v.

VICKIE YATES BROWN GLISSON, in her official capacity as Secretary of Kentucky's Cabinet for Health and Family Services

    *Serve*:
    Office Of The Secretary
    275 E. Main Street, 5 E-A
    Frankfort, KY 40621

        Defendant.

Case No.:  3:17-CV-189-GNS

Electronically Filed

## VERIFIED COMPLAINT

Plaintiffs, by and through their undersigned attorneys, bring this complaint against the above-named Defendant, her employees, agents, and successors in office, and in support thereof allege the following:

### I.  INTRODUCTION

1.  Plaintiffs bring this civil rights action, on behalf of themselves and their patients seeking abortions, challenging the Cabinet for Health and Family Services' (the "Cabinet's") attempt to shut down Kentucky's sole remaining licensed abortion facility. Despite their lack of medical necessity, Plaintiffs have for years had agreements on file

1

with the Cabinet that satisfy the state's requirements that an abortion facility maintain agreements with a local hospital and ambulance company to transfer patients in the rare event of an emergency (hereinafter "the Requirements"). Yet suddenly, on March 13, 2017, the Cabinet sent a letter to Plaintiffs informing them that 1) their agreements are in technical non-compliance with the Requirements and 2) that in 10 days Plaintiffs EMW Surgical Center's (EMW's) license will be revoked and the clinic will be shut down. The Cabinet granted a short extension to April 3, 2017. Thus, absent an injunction from this Court, on April 3, abortion will effectively be banned in the Commonwealth.

2.      Plaintiffs have had the same hospital agreement in place and on file with the Cabinet since 2014. And EMW has had virtually the same ambulance agreement on file with the Cabinet for more than eight years (collectively the "Agreements"). As a licensed abortion facility, EMW is subject to annual inspection, and just last year, the Cabinet found that these Agreements were acceptable, and renewed Plaintiffs' license through May 31, 2017.

3.      Despite these facts, out of the blue, on March 13, 2017, the Cabinet for the first time raised technical objections to the Agreements and sent a letter to EMW threatening to shut the clinic down in 10 days, around the same time as an evidentiary hearing was scheduled to begin in Plaintiffs' case against Defendant Glisson, challenging H.B. 2, a newly enacted forced ultrasound law.  EMW Women's Surgical Center, P.S.C. v. Beshear, No. 17-cv-00016-DJH (W.D.K.Y.).

4.      The effects of Defendant's sudden reversal could not be more drastic. If EMW is forced to close its doors, there will be no licensed abortion facility in the

Commonwealth of Kentucky, and Kentucky women will be left without access to a critical and constitutionally protected medical procedure in the Commonwealth.

5.     Not only is the harm extraordinary, but shutting EMW down would serve no valid state interest.  Indeed, neither the Requirements themselves nor the Cabinet's about-face regarding the acceptability of Plaintiffs' Agreements have any medical justification.  Complications from abortion in general are rare, and those that require hospitalization and that occur while a patient is at the abortion facility are exceedingly so.  And, in the exceedingly rare event that a complication requiring hospitalization does occur while a patient is at an abortion facility, ambulance companies will readily pick up patients, and hospitals are required by law to accept patients in an emergency. Moreover, in the extremely unlikely event that a patient requires hospitalization, each of the three doctors that practice at EMW have admitting privileges at one or more acute care hospitals within 1 mile of the clinic.

6.     Because of the extraordinary burden on the rights of Kentucky women and the lack of any medical justification, the Requirements are blatantly unconstitutional, both on their face and as applied to Plaintiffs, under the U.S. Supreme Court's recent decision in Whole Woman's Health v. Hellerstedt, 136 S. Ct. 2292 (2016).

7.     In addition, the Cabinet's sudden determination that it must shut the last remaining abortion clinic in the Commonwealth without affording Plaintiffs an opportunity for a pre-license revocation hearing, violates Plaintiffs' procedural due process rights under both the federal Constitution and state law.

8.     These actions are also in retaliation against Plaintiffs for exercising their First Amendment petition rights by filing a lawsuit against the Cabinet challenging Kentucky's new forced ultrasound requirement.

9.     To protect the constitutional rights of Plaintiffs and their patients, this Court must issue an emergency temporary restraining order and/or preliminary injunction barring the Cabinet from revoking EMW's license and otherwise enforcing the Requirements.  In addition, this Court should declare the Requirements unconstitutional and permanently enjoin their enforcement.

## II.     JURISDICTION AND VENUE

10.    Jurisdiction is conferred on this Court by 28 U.S.C. §§ 1331, 1343(a)(3).

11.    Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, by Rules 57 and 65 of the Federal Rules of Civil Procedure, and by the general legal and equitable powers of this Court.

12.    This Court also has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367.

13.    Venue is appropriate under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## III.     PLAINTIFFS

14.    Plaintiff EMW Women's Surgical Center, P.S.C., a Kentucky corporation located in Louisville, Kentucky, is the sole licensed abortion facility located in Kentucky. EMW has been providing abortion and reproductive health care to women since the 1980s.  In addition to Plaintiff Dr. Marshall, two other physicians provide abortions at EMW.  Both of them have privileges that permit them to admit patients at two acute-care

4

hospitals, Norton and University of Louisville Hospitals, which are located within 1 mile of EMW.

15.    Plaintiff Ernest Marshall, M.D., is a board-certified obstetrician-gynecologist who owns EMW.   Dr. Marshall also has admitting privileges at Norton Hospital.

16.    Dr. Marshall and EMW sue on behalf of themselves, their staff, and their patients.

## IV.    DEFENDANTS

17.    Defendant Vickie Yates Brown Glisson serves as Secretary of Kentucky's Cabinet for Health and Family Services ("the Cabinet")—an agency of the Commonwealth of Kentucky with its principal place of business in Franklin County, Kentucky. In her capacity as Secretary of the Cabinet, Defendant Glisson is charged with, *inter alia*, oversight and licensing of abortion providers and the regulatory enforcement of those facilities.    KRS 216B.040.   Defendant Glisson is sued in her official capacity.

## V.    STATUTORY AND REGULATORY FRAMEWORK

18.    Kentucky law requires abortion facilities to "enter into a written agreement with a licensed acute-care hospital capable of treating patients with unforeseen complications related to an abortion facility procedure by which agreement the hospital agrees to accept and treat these patients."  KRS 216B.0435.

19.    The same statute also requires abortion facilities to "enter into a written agreement with a licensed local ambulance service for the transport of any emergency patient" to the licensed acute-care hospital.  Id.

20.     The Agreements "shall be filed by the abortion facility with the cabinet." Id.

21.     The Cabinet's regulations mirror the statutory requirements, and require abortion facilities to "enter into written agreements with a licensed acute-care hospital and a local ambulance service for the transport and treatment of patients when hospitalization becomes necessary, as required by KRS 216B.0435" and "these written agreements shall be filed with the cabinet."  902 KAR 20:360, Sec. 10.

22.     Neither the statutes nor the regulations provide any further detail about what must be included in the agreements or who must sign them.

23.     The Cabinet may revoke a license "in any case in which it finds that there has been a *substantial* failure to comply with" the Requirements. The revocation shall be effected by mailing to the health care facility a notice setting forth the particular reasons for the action.  The revocation shall become final and conclusive thirty days after notice is given, unless the health care facility requests a hearing.  KRS 216B.105 (emphasis added).

24.     Moreover, under the Cabinet's regulations, "a regulatory violation identified during an inspection shall be transmitted in writing to the facility by the inspecting agency."  902 KAR 20:360, Sec. 2 (4)(c).  "The facility shall submit a written plan for the elimination or correction of the regulatory violation to the inspecting agency within ten (10) days."  Id., Sec. (4)(d).  Following review of the plan, the agency shall notify the facility of the acceptability of the plan, and if it is unacceptable, the agency shall give the facility ten days to modify the plan.  Id.

6

## VI.    **FACTUAL ALLEGATIONS**

Abortion in Kentucky and at EMW

25.    Legal abortion is one of the safest procedures in contemporary medical practice, and is substantially safer than childbirth.

26.    Women seek abortions for a variety of psychological, emotional, medical, familial, economic, and personal reasons.  The majority of women who have abortions already have at least one child.  Some women seek abortions because they feel that having an additional child will place too large a strain, economically or emotionally, on their existing family.  Some seek abortions because they feel that becoming a parent or having an additional child will interfere with their life goals.  Other women seek abortions because the pregnancy resulted from rape or incest.  Some women are terminating much wanted pregnancies because they have a medical condition caused, or exacerbated, by the pregnancy that places their health at risk, or because of a fetal diagnosis.

27.    Approximately 80% of the abortions performed at EMW are performed in the first trimester.

28.    EMW provides two types of abortion: medication abortion, which comprises about 45% of the abortions EMW provides, and surgical abortion, which comprises the remainder.

29.    Medication abortion is a method of ending an early pregnancy by taking medications at home that cause the woman to undergo a procedure similar to an early miscarriage.

30.    Surgical abortion, despite its name, is not a typical surgical procedure: it does not involve any incision.

31.    Because abortion is so safe, the vast majority of abortions in the United States can be and are safely provided in an outpatient setting.  Nationwide, less than 0.3% of abortion patients experience a complication requiring hospitalization on the day of the abortion.  EMW's rate is even lower.

32.    Even though abortion rarely results in complications, Plaintiffs provide high quality care in the rare event that it does. Most of the rare complications related to abortion are safely and appropriately handled in the outpatient setting.

33.    In the rare instances when complications requiring hospitalization do occur, they generally do not occur while the patient is still at the facility where she received her abortion.

34.    In the exceedingly rare case that a patient requires hospital-based care while she is still at the clinic, Plaintiffs' protocols and practices ensure that the patient receives the necessary, quality care.  Moreover, although unnecessary for patient care, EMW staff physicians have admitting privileges at the University of Louisville and Norton Hospitals, thus making a transfer agreement superfluous.

35.    Regardless of whether a clinic has an agreement with a local hospital, or admitting privileges, appropriate care is also ensured because hospitals provide necessary care to patients who need it.  Indeed, hospitals must comply with the federal Emergency Medical Treatment & Labor Act, which requires hospitals to treat and stabilize all emergency patients. 42 U.S.C. § 1395dd(b) (commonly referred to as EMTALA).

36.     An agreement with an ambulance company is similarly not necessary to protect a patient's health.  EMW – or any person in Louisville, where EMW is located – can simply call 911 and ask for an ambulance.  An ambulance will be dispatched by Metro Louisville government EMS Service to the person's location, and will transport the person to a hospital.  All patients in need of transportation are accepted regardless of their financial situation.   Moreover, EMW is located less than a mile from Norton and the University of Louisville Hospitals.

37.     Given all these factors, the Requirements do nothing to increase patient safety or health and are not medically necessary.

<u>Plaintiffs' Agreements and Licensing History</u>

38.     Plaintiffs' current emergency transfer agreement has been in place, and on file with the Cabinet, since 2014.  The agreement is signed by the Chair of the University of Louisville, Department of Obstetrics, Gynecology and Women's Health, who has the contractual authority for determining the manner in which OB-GYN services are provided at University of Louisville Hospital.  That agreement is attached hereto as **Exhibit A**.  As pointed out above, such an agreement is wholly superfluous given both EMTALA and the fact that each EMW physician has admitting privileges at University of Louisville and/or Norton Hospitals.

39.     In addition, EMW has had a virtually identical signed agreement with an ambulance company on file with the Cabinet for more than eight years.  Under that agreement the ambulance company "agrees to continue to provide medical transportation to EMW Women's Surgical Center patients."  Like the hospital transfer agreement, the ambulance agreement, and prior versions of it, have been continuously

on file with and approved by the Cabinet. The most recent version on file with the Cabinet is attached as **Exhibit B.**

40.     By a letter dated April 27, 2016, the Cabinet renewed EMW's license for the period June 1, 2016 through May 31, 2017.

41.     In a letter dated March 13, 2017, attached as **Exhibit C**, the Cabinet informed EMW that the renewal of its license was in error "because the written transfer agreement and ambulance transportation agreements were both deficient" and, therefore, EMW was out of compliance with the Requirements.

42.     In the letter the Cabinet alleged that EMW's hospital agreement, dated February 14, 2014, "is deficient in that it (1) is not signed by an authorized representative of the University of Louisville Hospital . . . (2) the University of Louisville Hospital withdrew from a similar arrangement with another abortion facility in 2016, and may have done so with the licensee, (3) the Chair, Department of Obstetrics, Gynecology and Women's Health is not authorized to enter into the Agreement and (4) the transfer agreement names the Emergency Room as the transferee." Id.

43.     The Cabinet also alleged that EMW's ambulance agreement, dated February 1, 2016, was insufficient because it "does not mandate with reasonable certainty the transport of the licensee's patients to the Transfer Agreement named entity . . . In fact, its terms are no more than an offer to provide a response time, upon being contacted, thus providing no certainty of transport for an emergency patient to the purported transfer hospital." Id.

44.     While Plaintiffs believe that the ambulance agreement in place on March 13 met all relevant legal requirements, Plaintiffs have nonetheless secured a new

agreement with the ambulance company that cures the alleged deficiencies. (That agreement is attached as **Exhibit D** and will be filed with the Cabinet imminently.)

45.     While Plaintiffs believe that the hospital agreement in place on March 13 meets all the relevant legal requirements, Plaintiffs nevertheless attempted to secure an additional signature on the agreement with the University of Louisville Hospital.

46.     Plaintiffs asked the Cabinet for clarification on their alleged deficiencies. In a letter dated March 23, attached as **Exhibit E**, the Cabinet established new parameters – not found in the statute or regulation – for compliance with the Requirements.  Notably, as to who must sign the hospital agreement, the March 23 letter says that the "Cabinet required [sic] the transfer agreement to [sic] between the abortion facility licensee and the *owner* of the acute care hospital, *not a subordinate division* etc. of it." (Emphasis added.)

47.     Plaintiffs obtained a signature from the interim president and CEO of University Medical Center, Ken Marshall on the hospital agreement, but shortly after he signed it, Mr. Marshall asked that the amended agreement not be sent to the Cabinet. Accordingly, Plaintiffs do not attach the amended agreement as an exhibit.

48.     The Cabinet sent another letter on March 27, 2017, **attached as Exhibit F**, to Plaintiffs' counsel stating that when EMW submits its renewal request for its license for the term June 1, 2017 to May 31, 2018, it must be in compliance with the Requirements, which is "independent of the pending [Office of Inspector General] statement of deficiency, which must be corrected not later than April 3, 2017 (as extended)."

49.     Despite the fact that Kentucky law permits license revocation only "in any case in which . . . there has been a *substantial* failure to comply with" the Requirements and despite Kentucky law that states that revocation shall not become final and conclusive until thirty days after notice is given, unless the health care facility requests a hearing, KRS 216B.105 (emphasis added), the Cabinet's letter informed EMW that it "shall have (10) calendar days to cure the two stated deficiencies by filing . . . a complaint Transfer Agreement and Transportation Agreement.  *Failure to cure these deficiencies **will** result in an immediate revocation of the Abortion Facility license.*"  Ex. C at 2 (emphasis added.)   No statutory authority for this immediate revocation exists.

50.     The timing of the Cabinet's March 13 letter is deeply suspicious.   The letter states that the Cabinet will revoke EMW's license on March 24, 2017, the day after Plaintiffs' temporary restraining order hearing was held in a case they filed against the Cabinet challenging another abortion restriction.  <u>EMW Women's Surgical Center, P.S.C. v. Beshear</u>, No. 17-cv-00016-DJH (W.D.K.Y.).  A decision has not been issued in that case.

51.     Plaintiffs' Agreements are in compliance with the Requirements.  Even if there were a technical deficiency, nothing in the regulations authorizes the Cabinet to revoke the facility's license within ten days (or twenty days, which is the total amount of time EMW was given to comply with an extension).  To the contrary, the statute requires notice of revocation of a license is not final until thirty days after notice is effected by the Cabinet.  KRS 216B.105(2).  And once notice is given, the facility can ask for a hearing and judicial appeal.  <u>Id.</u>

52. If the Cabinet revokes EMW's license on April 3, EMW would have no opportunity for a hearing and judicial review prior to losing its license, thereby denying it due process.

53. Given the timing of the letter, the Cabinet's arbitrary exercise of authority of EMW's license to operate, and the nature of the alleged violations identified, Defendant is, on information and belief, targeting Plaintiffs because they provide abortion services and are retaliating against them for filing another lawsuit challenging another abortion restriction.

54. If Plaintiffs are forced to close their doors, Kentucky women will have almost no ability to access abortion in their state. Some would attempt to induce abortion without a medical provider; others would be forced to delay their abortions in order to travel long distances to other states, which increases the risk and cost associated with the procedure; and some will be forced to carry to term against their will.

55. Plaintiffs and their patients have no adequate remedy at law.

**FIRST CLAIM FOR RELIEF**
**(Fourteenth Amendment Right to Substantive Due Process)**

56. The allegations of paragraphs 1 through 55 are incorporated as though fully set forth herein.

57. The Requirements, both on their face and as applied to Plaintiffs, violate the right of Plaintiffs' patients to substantive due process, as guaranteed by the Fourteenth Amendment to the U.S. Constitution, because they impose a substantial obstacle on women seeking abortions.

## SECOND CLAIM FOR RELIEF
### (Fourteenth Amendment Procedural Due Process and due process under KRS 216B.105(2))

58.     The allegations of paragraphs 1 through 57 are incorporated as though fully set forth herein.

59.     Revoking Plaintiffs' license and forcing them to shut their doors prior to a hearing would deprive Plaintiffs of their protected property interests without affording them any procedural protections, including those provided under state law.

## THIRD CLAIM FOR RELIEF
### (Fourteenth Amendment Due Process - Non-delegation)

60.     The allegations of paragraphs 1 through 59 are incorporated as though fully set forth herein.

61.     The Requirements violate Plaintiffs' due process rights under the Fourteenth Amendment to the United States Constitution by delegating standardless and unreviewable authority to private parties.

## FOURTH CLAIM FOR RELIEF
### (First Amendment Retaliation)

62.     The allegations of paragraphs 1 through 61 are incorporated as though fully set forth herein.

63.     Defendants' hyper-technical and arbitrary enforcement of the Requirements is in response to Plaintiffs' exercise of their First Amendment rights to speak, associate, and petition the court on matters of public concern.  Specifically, Defendants have targeted Plaintiffs for filing a lawsuit challenging another abortion restriction.

14

## REQUEST FOR RELIEF

Plaintiffs respectfully request that this Court:

1. Declare the Requirements unconstitutional, both as-applied and facially;

2. Grant preliminary and permanent injunctive relief enjoining Defendant, its employees, agents, and successors in office from enforcing the Requirements;

3. Grant Plaintiffs reasonable attorney's fees, costs, and expenses pursuant to 42 U.S.C. § 1988; and

4. Grant such other and further relief as this Court may deem just, proper, and equitable.

Date: March 29, 2017

Respectfully submitted,

*/s/ Donald L. Cox*
Donald L. Cox
John D. Cox
LYNCH, COX, GILMAN & GOODMAN, P.S.C.
500 W. Jefferson St., Ste. 2100
Louisville, KY 40202
doncox@lynchcox.com
jcox@lynchcox.com
(502) 589-4215

- and –

Brigitte Amiri*
New York State Bar No. 3017167
Jennifer Dalven*
New York State Bar No. 2784452
Elizabeth Watson*
California Bar No. 295221
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
bamiri@aclu.org
jdalven@aclu.org
(212) 549-2633

William E. Sharp
Heather L. Gatnarek
ACLU of Kentucky
315 Guthrie Street, Suite 300
Louisville, KY 40202
sharp@aclu-ky.org
heather@aclu-ky.org
(502) 581-9746

*Attorneys for Plaintiffs*

*\*Motion for pro hac vice to be filed*

## **DECLARATION**

I declare under penalty of perjury that the statements contained in the Complaint are true and accurate to the best of my knowledge and belief.

*Ernest W. Marshall, M.D.*

Ernest W. Marshall, M.D.

COMMONWEALTH OF KENTUCKY )
                                               ) ss:
COUNTY OF JEFFERSON         )

Subscribed and sworn to before me by Ernest W. Marshall on this 29th day of March, 2017.

My Commission Expires: July 5, 2018

*Patricia M. Bauer*

Notary Public, State-at-Large