UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:17-CV-00189-GNS

EMW WOMEN'S SURGICAL CENTER,
P.S.C., on behalf of itself, its staff, and its
patients; and ERNEST MARSHALL, M.D.,
on behalf of himself and his patients                              PLAINTIFFS

v.

VICKIE YATES BROWN GLISSON,
in her official capacity as Secretary of the
Cabinet for Health and Family Services                             DEFENDANT

**MEMORANDUM OPINION & ORDER**

This matter is before the Court upon Planned Parenthood of Indiana and Kentucky, Inc.'s Motion to Intervene (DN 19). For the reasons stated below, the motion is **GRANTED**.

### I.   BACKGROUND

This case concerns the constitutionality of KRS 216B.0435. On March 13, 2017, the Cabinet for Health and Family Services ("the Cabinet") notified EMW Women's Surgical Center, P.S.C. ("EMW") that its abortion-facility license had been erroneously renewed because of deficiencies in its transfer and transport agreements, which are required by KRS 216B.0435. (Compl. Ex. C, DN 1-4). The Cabinet told EMW its license would be revoked if it failed to cure the alleged deficiencies by April 3, 2017. (Compl. Ex. F, DN 1-7). Subsequently, on March 29, 2017, Plaintiffs filed this action against Defendant Vickie Yates Brown Glisson ("Glisson") in her official capacity as Secretary of the Cabinet, alleging that the Cabinet's actions and KRS 216B.0435 violate the First and Fourteenth Amendments of the United States Constitution. (Compl. ¶¶ 56-61). Plaintiffs also moved for a temporary restraining order and/or a preliminary

injunction precluding the Cabinet from terminating EMW's license. (Mot. TRO and/or Prelim. Inj., DN 3).

On March 31, 2017, after finding that Plaintiffs had demonstrated a likelihood of success on the merits and would suffer immediate and irreparable harm otherwise, the Court issued an *ex parte* order temporarily enjoining Glisson from "enforcing, attempting to enforce, threatening to enforce, or otherwise requiring compliance KRS 216B.0435 and 902 KAR 20:360, Section 10" for fourteen days. (Order 3-4, DN 6). Later, upon agreement of the parties, the Court converted its temporary restraining order into a preliminary injunction until final judgment, scheduled a bench trial for September 6, 2017, and set a pre-trial schedule. (Order, DN 11; Order, DN 16).

Now, Planned Parenthood of Indiana and Kentucky, Inc. ("Planned Parenthood") moves to intervene in the case as of right pursuant to Fed. R. Civ. P. 24(a) or, in the alternative, requests the Court's permission to intervene under Fed. R. Civ. P. 24(b). (Mot. Intervene, DN 19). Planned Parenthood asserts that it was denied an abortion-facility license because its transfer and transport agreements were deficient under KRS 216B.0435. Like EMW, Planned Parenthood contends that the statute is unconstitutional because it imposes medically unnecessary restrictions on abortion facilities with the purpose of shuttering all abortion facilities in the Commonwealth. (Mot. Intervene 3). According to Planned Parenthood, any decision regarding the constitutionality of KRS 216B.0435 will impair its ability to protect its interests and the interests of its patients. (Mot. Intervene 4). Furthermore, it is alleged that the interests of Planned Parenthood and its patients are not adequately represented by EMW because the immediate facts underlying the Cabinet's denial of Planned Parenthood's license application are distinct from those underlying the Cabinet's attempt to revoke EMW's license. (Mot. Intervene

4). Glisson opposes Planned Parenthood's intervention, arguing that it is untimely, premature, and unnecessary. (Def.'s Resp. Mot. Intervene, DN 30).

To understand the parties' contentions regarding Planned Parenthood's proposed intervention, a bit more background is necessary. In December 2015, Planned Parenthood opened a new facility in Louisville, Kentucky that provides a range of women's-health services. (Stipulated Facts ¶ 3, DN 30-1). So that it could also provide medication and surgical abortions at the Louisville facility, Planned Parenthood submitted an application for an abortion-facility license to the Cabinet in November 2015. (Stipulated Facts ¶ 4). The application included a transfer agreement with a hospital and a transport agreement with an ambulance service. (Stipulated Facts ¶¶ 7-8). In January 2016, the Cabinet informed Planned Parenthood that the submitted agreements were deficient. (Stipulated Facts ¶ 9).

Planned Parenthood submitted new transfer and transport agreements a month later. (Stipulated Facts ¶ 11). Specifically, Planned Parenthood had one transfer agreement with University of Kentucky's Chandler Medical Center in Lexington, Kentucky and Good Samaritan in Lexington, Kentucky and another with Clark Memorial Hospital in Jeffersonville, Indiana (apparently less than four miles from Planned Parenthood's Louisville, Kentucky facility). (Stipulated Facts ¶¶ 14-16; Mot. Intervene 9). On September 9, 2016, however, the Cabinet denied Planned Parenthood's license application, explaining that the transfer agreements were non-compliant because of the unreasonable distance between Louisville and the hospitals in Lexington and also because the Inspector General of the Cabinet "could not ensure that Clark Memorial was truly capable of treating patients with unforeseen complications" due to its Indiana location beyond the Cabinet's jurisdiction. (Stipulated Facts ¶ 19; Def.'s Resp. Mot. Intervene, Ex. 2, at 3, DN 30-2; Def.'s Resp. Mot. Intervene 3).

Planned Parenthood decided to contest the Cabinet's denial of its license application through the administrative process provided by KRS 216B.105. (*See* Stipulated Facts ¶ 23). A hearing was held on January 11, 2017, consisting entirely of legal arguments based on the parties' stipulated factual record. (Def.'s Resp. Mot. Intervene Ex. 3, at 2, DN 30-3 [hereinafter Recommended Order]). The hearing officer then reopened the factual record—over Planned Parenthood's objection—and conducted an additional hearing on March 27 and 29, 2017. (Recommended Order 2; Mot. Intervene 3). On April 25, 2017, the hearing officer issued a recommended order, affirming the Cabinet's denial of Planned Parenthood's license application. (Recommended Order 9-10). Planned Parenthood filed exceptions to the hearing officer's recommended order pursuant to KRS 13B.110(4). (Def.'s Resp. Mot. Intervene Ex. 4, DN 30-4). The administrative matter remains pending, with a final decision due by July 19, 2017. (Reply 7, DN 35 (citing KRS 13B.120(4)).

## II. JURISDICTION

The Court has subject matter jurisdiction over this case because a federal question is presented. 28 U.S.C. § 1331.

## III. STANDARD OF REVIEW

Under Fed. R. Civ. P. 24(a), the "court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). To satisfy this rule, the Sixth Circuit requires a prospective intervenor to prove four elements: "1) the application was timely filed; 2) the applicant possesses a substantial legal interest in the case; 3) the applicant's ability to protect its interest will be impaired without

4

intervention; and 4) the existing parties will not adequately represent the applicant's interest." *Blount-Hill v. Zelman*, 636 F.3d 278, 283 (6th Cir. 2011) (citing *Grutter v. Bollinger*, 188 F.3d 394, 397-398 (6th Cir. 1999)).

Meanwhile, Fed. R. Civ. P. 24(b) provides that "the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). Once the prospective intervenor establishes this requirement, "the district court must then balance undue delay and prejudice to the original parties, if any, and any other relevant factors to determine whether, in the court's discretion, intervention should be allowed." *United States v. Michigan*, 424 F.3d 438, 445 (6th Cir. 2005) (citing *Mich. State AFL-CIO v. Miller*, 103 F.3d 1240, 1248 (6th Cir. 1997)).

## IV. DISCUSSION

### A. Intervention Is Planned Parenthood's Right

Planned Parenthood has satisfied each element of the intervention-of-right test. These elements are addressed in turn:

#### 1. *Planned Parenthood's Application Is Timely*

In determining whether an application is timely, the Court considers the following factors:

> (1) the point to which the suit has progressed; (2) the purpose for which intervention is sought; (3) the length of time preceding the application during which the proposed intervenors knew or should have known of their interest in the case; (4) the prejudice to the original parties due to the proposed intervenors' failure to promptly intervene after they knew or reasonably should have known of their interest in the case; and (5) the existence of unusual circumstances militating against or in favor of intervention.

*Jansen v. City of Cincinnati*, 904 F.2d 336, 340 (6th Cir. 1990). "No one factor is dispositive, but rather the determination of whether a motion to intervene is timely should be evaluated in the

5

context of all relevant circumstances." *Blount-Hill*, 636 F.3d at 284 (internal quotation marks and citation omitted).

### a. Case Progression

This case has not progressed so far that intervention should be denied. Planned Parenthood filed its motion a little over a month after Plaintiffs filed suit. (*Compare* Mot. Intervene, *with* Compl.). At the time of Planned Parenthood's motion, the parties had filed no dispositive motions and engaged in minimal discovery. (*Compare* Mot. Intervene, *with* Order, DN 16). The only case Glisson cites in support of her argument to the contrary, *Stupak-Thrall v. Glickman*, 226 F.3d 467 (6th Cir. 2000), is distinguishable. There, the court found that this factor weighed against intervention because at the time of the prospective intervenor's motion "discovery was closed, the experts were producing their reports, and the court's previously-identified 'finish line' - final disposition of a case on an expedited track should occur nine to twelve months after the date the complaint is filed - was fast approaching." *Id.* at 475.

The same cannot be said here. While the Court set an expedited pre-trial schedule, discovery had just begun when Planned Parenthood filed its motion. Therefore, this factor does not weigh in favor of finding Planned Parenthood's motion untimely

### b. Purpose of Intervention

Under this factor, the Court "evaluate[s] the purpose of intervention in terms of the importance of the legal interests asserted." *Clarke v. Baptist Mem'l Healthcare Corp.*, 427 F. App'x 431, 436 (6th Cir. 2011) (internal quotation marks and citation omitted). Planned Parenthood seeks to intervene to advocate that KRS 216B.0435 violates its patients' constitutional rights. The Court considers no legal interest more paramount. Therefore, this factor does not weigh in favor of finding Planned Parenthood's motion untimely.

### c. Length of Time Between Planned Parenthood's Motion and When It Knew About Its Interest in This Case

Glisson argues that Planned Parenthood's motion is untimely because it must have known about this case from the outset due to "substantial media coverage." (Def.'s Resp. Mot. Intervene 10). Furthermore, Glisson contends that Planned Parenthood's conduct approximates the "wait-and-see" approach adopted by the prospective intervenor in *United States v. Tennessee*, 260 F.3d 587, 594 (6th Cir. 2011), because it awaited the hearing officer's decision before deciding to file its motion. In *Tennessee*, a case that was consolidated for appeal, the Sixth Circuit affirmed the district courts' decisions denying motions to intervene as untimely in part because settlement agreements had been reached pending final approval when the prospective intervenor filed its motion. *Id.* at 592-93.

Here, Planned Parenthood maintains that, upon learning of EMW's case, it immediately began preparing its motion to intervene and proposed intervening complaint, which were filed a little over a month later. Glisson has no factual basis for her assertion regarding the decision-making process behind Planned Parenthood's motion to intervene. This factor does not weigh in favor of finding Planned Parenthood's motion untimely.

### d. Prejudice to Original Parties

Glisson avers that she and Plaintiffs will be prejudiced by Planned Parenthood's intervention based on the forecast that Planned Parenthood will derail the Court's scheduling order. Specifically, Glisson maintains that, because Planned Parenthood apparently desires to inquire into the motive behind the Cabinet's denial of its license application, "countless depositions" will have to be taken and "untold numbers of documents" will be requested. (Def.'s Resp. Mot. Intervene 13).

This argument is unfounded. All of Glisson's concerns are covered by the Court's scheduling order, which Planned Parenthood has indicated it can meet. (Mot. Intervene 10). Moreover, the only case Glisson cites in support of her prejudice argument, *Blount-Hill*, is inapposite. There, the court held that "[i]n view of the extensive litigation that has occurred . . . , including two motions to dismiss, numerous amended pleadings, and the denial and appeal of a motion to intervene, intervention at this late stage would cause prejudice in the form of undue delay." *Blount-Hill*, 636 F.3d at 286. Here, no such "extensive litigation" had occurred at the time Planned Parenthood filed its motion. This factor does not weigh in favor of finding Planned Parenthood's motion untimely.

e. **Unusual Circumstances**

Glisson believes that Planned Parenthood's current participation in the administrative-review process is an unusual circumstance that "weighs heavily against intervention." (Def.'s Resp. Mot. Intervene 13). Her argument is premised on the doctrine of standing, i.e., if the agency head issues a final order disagreeing with the hearing officer and granting Planned Parenthood an abortion-facility license, Planned Parenthood will have suffered no actual, concrete injury. This argument is misplaced for a number of reasons.

First, Planned Parenthood suffered an actual, concrete injury when the Cabinet denied its license application based on an allegedly unconstitutional law. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (describing test for determining Article III standing). The notion that the Cabinet would change course and grant Planned Parenthood's license seems unlikely. Indeed, the hearing officer issued a recommended order affirming the Cabinet's denial of Planned Parenthood's license application after this Court temporarily enjoined the Cabinet from enforcing KRS 216B.0435 with respect to EMW's license and after the parties agreed to convert

that temporary order into a preliminary injunction. Second, should the Cabinet grant Planned Parenthood a license, that determination is due by July 19, 2017, well before the date of trial, so Glisson can bring up the issue of standing then. Last, and perhaps most importantly, standing is irrelevant. In the context of whether a prospective intervenor has a substantial legal interest in the case in which intervention is sought, the Sixth Circuit has held that "an intervenor need not have the same standing necessary to initiate a lawsuit." *Grutter*, 188 F.3d at 398 (citations omitted). Therefore, it makes little sense to apply the doctrine and deny Planned Parenthood's motion based upon "unusual circumstances."

### 2. *Planned Parenthood Has a Substantial Legal Interest in This Case*

The Sixth Circuit has adopted a "rather expansive notion of the interest sufficient to invoke intervention of right." *Miller*, 103 F.3d at 1245; *Bradley v. Milliken*, 828 F.2d 1186, 1192 (6th Cir. 1987) ("This court has acknowledged that 'interest' is to be construed liberally.") (quoting *Hatton v. Cty. Bd. of Educ. of Maury Cty., Tenn.*, 422 F.2d 457, 461 (6th Cir. 1970)). And it has "cited with approval decisions of other courts 'rejecting the notion that Rule 24(a)(2) requires a specific legal or equitable interest.'" *Miller*, 103 F.3d at 1245 (quoting *Purnell v. City of Akron*, 925 F.2d 941, 948 (6th Cir. 1991)). In fact, "close cases should be resolved in favor of recognizing an interest under Rule 24(a)." *Id.* at 1247.

While "the inquiry into the substantiality of the claimed interest is necessarily fact-specific[,]" *id.* at 1245, review of Sixth Circuit case law addressing the substantial-interest requirement is nonetheless helpful. In *Grutter v. Bollinger*, white applicants denied admission to the University of Michigan sued alleging that the University's admission policy violated their civil rights because it used race as a factor. *Grutter*, 188 F.3d at 396-97. A group of minority students who had applied or intended to apply to the University, as well as pro-affirmative action

coalitions, sought to intervene. *Id*. at 397. The Sixth Circuit held that the petitioning intervenors had a substantial legal interest in maintaining the use of race as a factor in the admission policy. *Id.* at 398-99. The court explained that, in *Michigan State AFL-CIO v. Miller*, it found the Michigan Chamber of Commerce had a substantial interest in a lawsuit challenging amendments to the state's campaign finance law by virtue of its role in the political process that resulted in adoption of the contested amendments. *Id.* at 399 (citations omitted). The court then compared *Miller* to the facts before it and noted that "the interest implicated in [this case is] even more direct, substantial, and compelling than the general interest of an organization in vindicating legislation that it had previously supported." *Id.*

By contrast, in *Northland Family Planning Clinic, Inc. v. Cox*, 487 F.3d 323 (6th Cir. 2007), the court declined to allow a public-interest group to intervene as of right because it lacked a substantial legal interest in the outcome of the case. *Id.* at 346. In so holding, the court afforded particular significance to the fact that, unlike the Chamber of Commerce in *Miller*, the group had "only an ideological interest in the litigation" where the litigation did not involve regulation of the group's conduct. *Id.* at 345. Importantly, however, the court recognized that if the statute at issue did regulate the group or its members, the group "would likely have a legal interest, much like the intervenors in *Grutter*." *Id.*

In light of *Miller*, *Grutter*, and *Cox*, Planned Parenthood has a substantial legal interest in the outcome of this case. The Cabinet denied Planned Parenthood's abortion-facility license under KRS 216B.0435, the same statute under which the Cabinet attempted to revoke EMW's license and which statute EMW asks the Court to declare unconstitutional. Planned Parenthood is a women's-medical-care facility vying to offer abortion services in the Commonwealth; KRS 216B.0435 will clearly continue to regulate Planned Parenthood's conduct so long as it is

10

effective. In turn, Planned Parenthood has a substantial legal interest in advocating the unconstitutionality of KRS 216B.0435. This interest is certainly "more direct, substantial, and compelling than the general interest of an organization in vindicating legislation that it had previously supported." *Grutter*, 188 F.3d at 399.

Glisson's standing-centric arguments are of no avail on this point. Again, Rule 24(a)(2) does not require "a specific legal or equitable interest" and the prospective intervenor "need not have the same standing necessary to initiate a lawsuit." *Miller*, 103 F.3d at 1245 (internal quotation marks and citations omitted). Even if this case were a close one, the Court would have to resolve it in favor of recognizing an interest under Rule 24(a). *Id.* at 1247.

### 3. *Planned Parenthood's Ability to Protect Its Interest Will Be Impaired Without Intervention*

"To satisfy this element of the intervention test, [Planned Parenthood] must show only that impairment of its substantial interest is possible if intervention is denied. This burden is minimal." *Id.* (citing *Purnell*, 925 F.2d at 948). The Sixth Circuit has recognized that "potential stare decisis effects can be a sufficient basis for finding an impairment of interest." *Id.* (citing *Linton v. Comm'r of Health & Env't*, 973 F.2d 1311, 1319 (6th Cir. 1992)). As Planned Parenthood points out, an adverse ruling for EMW in this case has the potential to adversely affect subsequent challenges to the constitutionality of KRS 216B.0435 by Planned Parenthood and thus directly inhibit Planned Parenthood's ability to acquire and maintain an abortion-facility license. Therefore, Planned Parenthood has met its minimal burden to establish this element.

### 4. *Planned Parenthood's Interest Will Not Be Adequately Represented by the Existing Parties*

Under this element, Planned Parenthood is "not required to show that the representation will in fact be inadequate." *Id.* Instead, Planned Parenthood has the "minimal burden" of

proving "that representation *may* be inadequate." *Linton*, 973 F.2d at 1319 (emphasis added) (citing *Trbovich v. UMWA*, 404 U.S. 528, 539 (1972)). If Planned Parenthood "present[s] legitimate and reasonable concerns about whether [EMW] will present" certain claims or arguments in certain inquiries, the Court should "conclude that [Planned Parenthood has] . . . established the possibility of inadequate representation." *Grutter*, 188 F.3d at 400-01.

Planned Parenthood has explained that, while it and EMW have the same underlying objective, the two will raise different arguments to demonstrate the unconstitutionality of the subject statute. For example, Planned Parenthood desires to "expose the transfer statute's purported requirement that the hospital be within Kentucky, as well as the supposed distance requirement, . . . neither of which is at issue in the EMW case." (Mot. Intervene 8-9). Glisson seemingly views this distinction as irrelevant because Planned Parenthood and EMW both seek a permanent injunction and declaration that KRS 216B.0435 is facially unconstitutional. This is true, but Glisson overlooks the fact that both Planned Parenthood and EMW forward as-applied challenges to the statute as well. (Compl. ¶ 57; Intervening Compl. ¶ 57). Because Planned Parenthood may present arguments and theories different from EMW, it has met its minimal burden to prove this element.

### B. <u>Intervention Is Nevertheless Permitted</u>

The constitutionality of KRS 216B.0435 presents a question of law common both to EMW and Planned Parenthood's intervention. Furthermore, as discussed above, there should be no unjust delay or prejudice to the existing parties as a result of Planned Parenthood's intervention. There is a scheduling order in place, and Planned Parenthood has signaled that it can meet the deadlines in that scheduling order. Therefore, to the extent Planned Parenthood is

not entitled to intervene as a matter of right, its motion to intervene would nevertheless be granted under the discretion afforded by Fed. R. Civ. P. 24(b).

## V. CONCLUSION

For the reasons discussed above, Planned Parenthood of Indiana and Kentucky, Inc.'s Motion to Intervene (DN 19) is **GRANTED**.

**Greg N. Stivers, Judge
United States District Court**

June 22, 2017

cc: counsel of record