UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:17CV-00189-GNS

EMW WOMEN'S SURGICAL
CENTER, P.S.C.                                                              PLAINTIFF

and

PLANNED PARENTHOOD OF INDIANA
AND KENTUCKY, INC.                                              INTERVENING PLAINTIFF

VS.

VICKY YATES BROWN GLISSON, et al.                                        DEFENDANTS

### MEMORANDUM OPINION AND ORDER

Presently before the Court is Defendants Secretary Vicky Yates Brown Glisson and Governor Matthew G. Bevin's ("Defendants") Motion for Protective Order and Motion to Quash the Subpoena relating to Intervening Plaintiff Planned Parenthood of Indiana and Kentucky's ("Planned Parenthood's") noticed deposition of Governor Bevin. (DN 59). Planned Parenthood has filed a response in opposition. (DN 70). Because this case's bench trial is rapidly approaching, the Court finds it appropriate to address this motion at once.

### Background

This case concerns the constitutionality of KRS § 216B.0435, a statute requiring abortion clinics to maintain written "transfer agreements" with a licensed acute care hospital and written "transport agreements" with a licensed ambulance service. On March 13, 2017, the Cabinet for

Health and Family Services notified EMW Women's Surgical Center P.S.C. of Louisville ("EMW") that its abortion-facility license had been erroneously renewed because of deficiencies in its transfer and transport agreements as required by KRS § 216B.0435. (DN 1-4). The Cabinet told EMW its license would be revoked if it failed to cure the alleged deficiencies by April 3, 2017. (DN 1-7). Planned Parenthood similarly was granted a license to operate as a Special Health Clinic and submitted transfer and transport agreements to the Cabinet, as required to perform abortions. (DN 46, at ¶ 12). But in January of 2016, Planned Parenthood was informed by letter from the Cabinet that deficiencies existed in its transfer and transport agreements. (*Id.* at ¶ 47). Planned Parenthood submitted two new hospital transfer agreements and one new transport agreement, which were all found deficient by the Cabinet in September of 2016. (*Id.* at ¶ 48).

EMW filed this action on March 29, 2017, against Vicky Yates Brown Glisson ("Glisson") in her official capacity as Secretary of the Cabinet for Health and Family Services alleging that the Cabinet's actions and KRS 216B.0435 violate the First and Fourteenth Amendments of the United States Constitution. (DN 1, at ¶¶ 56-61). Almost three months later the Court permitted Planned Parenthood to intervene as a plaintiff. (DN 45). Planned Parenthood's intervening complaint added Matthew Bevin as a defendant, in his official capacity as the Governor of Kentucky, and alleges that Governor Bevin "has caused his agents, under his supervision and direction, to obstruct [Planned Parenthood's] Louisville Health Center from providing abortions by any means necessary, including misapplication of the plain language of the challenge statute and regulation." (DN 46, at ¶ 13).

Deposition of Governor Bevin

Defendants have filed a motion for protective order and motion to quash subpoena seeking to prevent Planned Parenthood from taking the deposition of Governor Bevin. (DN 59). Defendants argue that Governor Bevin should not be subject to a deposition because he is a high-ranking government official and has no first-hand knowledge of the claims at issue in this case and "never caused his agents to obstruct either Plaintiff's procurement or transfer agreements." (DN 59, at pp. 3-5). Defendants believe the Court should apply the "extraordinary circumstances" test adopted by a number of circuits[1] and by some district courts within the Sixth Circuit. (*Id.* (citing *Boudreau v. Bouchard*, No. 07-10529, 2008 WL 4386836, at *2 (E.D. Mich. Sept. 25, 2008); *Jackson v. City of Detroit*, No. 05-74236, 2007 L 2225886 (E.D. Mich. Aug. 1, 2007)). According to Defendants, Planned Parenthood only seeks to take Governor Bevin's deposition as a fishing expedition and to harass the Governor. (*Id.* at p. 9).

Planned Parenthood counters that the Sixth Circuit's opinion in *Serrano v. Cintas Corp.* controls the analysis of this issue. (DN 70, at p. 8 (citing *Serrano v. Cintas Corp.*, 699 F.3d 884, 901 (6th Cir. 2012)).[2] Governor Bevin's reliance on his position as a high-ranking government official and failure to offer particular and specific demonstrations of fact and any alleged harm by the deposition, Planned Parenthood asserts, is not enough to warrant a protective order to prevent

---

1 *See Lederman v. New York City Dept. of Parks & Recreation*, 731 F.3d 199, 203 (2d Cir. 2013) (citing *Bogan v. City of Boston*, 489 F.3d 417, 423 (1st Cir. 2007); *In re United States (Holder)*, 197 F.3d 310, 313-14 (8th Cir. 1999); *In re FDIC*, 58 F.3d 1055, 1060 (5th Cir. 1995); *In re United States (Kessler)*, 985 F.2d 510, 512 (11th Cir. 1993); *Franklin Sav. Ass'n v. Ryan*, 922 F.2d 209, 211 (4th Cir. 1991); *Simplex Time Recorder Co. v. Sec'y of Labor*, 766 F.2d 575, 586 (D.C. Cir. 1985); *Kyle Eng'g Co. v. Kleppe*, 600 F.2d 226, 231-32 (9th Cir. 1979); *Warren Bank v. Camp*, 397 F.2d 52, 56-57 (6th Cir. 1968)).

2 It should be noted that the Sixth Circuit in *Serrano* held that the "apex doctrine" did not preclude the deposition of the defendant corporation's chief executive officer. 699 F.3d at 902.

his deposition. (*Id.*). Planned Parenthood also presents an e-mail exchange between University of Louisville officials that it believes justifies compelling the Governor's deposition. (*Id.* at p. 11).

Federal Rule of Civil Procedure 26 permits a party or person from whom discovery is sought to "move for a protective order in the court where the action is pending – or as an alternative on matters relating to deposition, in the court for the district where the deposition will be taken." Fed.R.Civ.P. 26(c)(1). This Rule explains that district courts may, "for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . ." *Id.* As pointed out by Planned Parenthood, the Sixth Circuit has endorsed the view that "to justify a protective order, one of Rule 26(c)(1)'s enumerated harms "must be illustrated 'with a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.'" *Serrano v. Cintas Corp.*, 699 F.3d 884, 901 (6th Cir. 2012) (quoting *Nemir v. Mitsubishi Motos Corp.*, 381 F.3d 540, 550 (6th Cir. 2004) (additional citations omitted)).

It is important to recognize, however, that many courts have found high-ranking government officials are generally not subject to deposition, unlike the CEO in *Serrano*. *See Murray v. U.S. Dep't of Treasury*, No. 08-cv-15147, 2010 WL 1980850, at *2 (E.D Mich. May 18, 2010). This is because of the "responsibilities and time constraints incumbent on high-ranking officials" and because "testifying in every case to which the agency or administration is a party would monopolize the official's time." *Id.* (citing *In re United States (Kessler)*, 985 F.2d 510, 512 (11th Cir. 1993); *Simplex Time Recorder Co. v. Sec'y of Labor*, 766 F.2d 575, 586 (D.C. Cir. 1985); *United States v. Morgan*, 313 U.S. 409, 422, 61 S. Ct. 999, 85 L.Ed. 1429 (1941)).

But this limitation is not absolute. *See Boudreau v. Bouchard*, No. 07-10529, 2008 WL 4386836, at *2 (E.D. Mich. Sept. 25, 2008). The general rule across the circuits is "that absent

4

extraordinary circumstances, high-ranking officials may not be subjected to depositions or called to testify regarding their official actions." *See Coleman v. Schwarzenegger*, Nos. CIV S-90-0520 LKK JFM, C01-1351 TEH, 2008 WL 4300437, at *3-4 (E.D. Cal. Sept. 15, 2008) (collecting cases). The extraordinary circumstances test may be met where the official has "first-hand knowledge related to the claim being litigated[,]" *Boudreau*, 2008 WL 4386836, at *2 (citing *Baine v. Gen. Motors Corp.*, 141 F.R.D. 332, 335 (M.D. Ala. 1991) (additional citations omitted)), and "where it is shown that other persons cannot provide the necessary information[,]" *id.* (citing *In re United States (Holder)*, 197 F.3d 310, 314 (8th Cir. 1999)).

The "extraordinary circumstances test" outlined above is very similar to the so-called "apex doctrine." *Serrano* explains that the apex doctrine bars the deposition of "high level executives absent a showing of their 'unique and personal knowledge' of relevant facts." 699 F.3d at 900. This doctrine "appears to assume that 'harassment and abuse' are 'inherent' in depositions of high-level corporate officers[.]" *Id.* at 901. *Serrano* specifically overturned a magistrate judge's decision to prevent the deposition of the CEO of a corporate defendant when the magistrate judge applied the apex doctrine and did not analyze what harm the CEO would suffer under Rule 26(c)(1) by submitting to the deposition. *Id.* at 902. Yet it is not clear whether the *Serrano* ruling also extends to high-ranking government officials, such as Governor Bevin in this case. *See Duncan v. Husted*, No. 2:13-cv-1157, 2015 WL 631103, at *3 (S.D. Ohio, Feb. 12, 2015) (analyzing whether *Serrano's* directive would apply equally to governmental officials as it does to corporate officials).

Regardless of whether the Court applies the extraordinary circumstances test ("apex doctrine") relied on in other circuits or applies the strict adherence to Rule 26 as outlined in *Serrano*, Governor Bevin's deposition should not go forward.

First, Governor Bevin is undeniably a high-ranking official not normally subject to the burden of depositions. *See New York v. Oneida Indian Nation of New York*, No. 95-CV-0554 (LEK/RFT), 2001 WL 1708804 (N.D.N.Y. Nov. 9, 2001) ("[w]ithout a doubt, Governor Pataki is such a high-ranking state government official for whom the Court should not lightly impose the burden of providing a deposition."); *see also Hernandez v. Texas Dep't of Aging & Disability Servs.*, No. A-11-CV-856 LY, 2011 WL 6300852 (W.D. Tex. Dec. 16, 2011); *Thomas v. Cate*, 715 F. Supp. 2d 1012, 1049 (E.D. Cal 2010); *Coleman v. Schwarzenegger*, Nos. CIV S-90-0520 LKK JFM, C01-1351 TEH, 2008 WL 4300437, at *3-4 (E.D. Cal. Sept. 15, 2008). The inquiry then becomes whether extraordinary circumstances exist for subjecting Governor Bevin to a deposition in this case. Planned Parenthood emphasizes an email thread between University of Louisville officials that mentions "gubernatorial consternation over doing tubals and abortions at Kentucky One[,]" the "agreement with Planned Parenthood . . . caus[ing] heartburn for Bevin[,]" and that "McCarthy is trying to keep the Governor happy with UofL[.]" (DN 70-6). Planned Parenthood feels this e-mail "places the Governor squarely in the middle of the very transfer agreements and licensing decisions from which he claims to be independent. But Planned Parenthood fails to acknowledge that later in the e-mail thread, a recipient, Gregory Postel, indicated "there is significant misinformation in this conversation[,]" which calls the probative value of this conversation into question. (*Id.*). This evidence does not, on its own, establish extraordinary circumstances for permitting Governor Bevin's deposition. Further, Defendants explain that

6

Governor Bevin does not have first-hand knowledge of the matters at issue in the case. (DN 59). Under this test, the Court finds extraordinary circumstances do not exist to warrant deposition of Governor Bevin.

Second, even if the so-called apex doctrine was inapplicable, Defendants have sufficiently specified the harm Governor Bevin would suffer by submitting to the deposition as required by *Serrano*. *See Duncan*, 2015 WL 631103, at *3-4. Defendants allege the Governor's deposition is a fishing expedition intended to harass by putting forth deposition testimony of nine individual decision-makers in the case on the question of whether they communicated with Governor Bevin on the topics at issue in the case. Only one of these nine depositions, that of Ruth Brinkley, the President and CEO of KentuckyOne Health, revealed any communication with Governor Bevin relating to the revocation of the transfer agreements. But even Brinkley's communications do not squarely place Bevin in the middle of the transfer agreement controversy as Planned Parenthood alleges. Brinkley indicated she spoke with Governor Bevin at a mutual friend's birthday party where Governor Bevin requested that KentuckyOne Health issue a statement indicating that its decision not to allow University of Louisville Hospital to enter into the transfer agreement was not influenced by any outside entities. (DN 59-2). Later in the deposition, Brinkley confirmed that she made the decision to terminate the agreement with Planned Parenthood independently and free from outside influence. (*Id.*).

The Court agrees with Defendants that the numerous depositions previously taken in this case that do not reveal improper communications with the Governor supports the Defendants' allegation that the Governor's deposition would be a fishing expedition intended to harass or

7

annoy. These particularized statements of fact, the Court finds, establish sufficient harm to Governor Bevin to justify a protective order under both Rule 26 and *Serrano*.

## ORDER

**IT IS HEREBY ORDERED** that Defendants' Motion for Protective Order to prevent the deposition of Governor Bevin (DN 59) is **GRANTED**.

Copies:       Counsel of Record