**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

| | |
|---|---|
| EMW WOMEN'S SURGICAL CENTER, P.S.C., on behalf of itself, its staff, and its patients; and ERNEST MARSHALL, M.D., on behalf of himself and his patients,<br><br>        Plaintiffs,<br><br>and<br><br>PLANNED PARENTHOOD OF INDIANA AND KENTUCKY, INC., on behalf of itself, its staff, and its patients,<br><br>        Intervenor-Plaintiff,<br>v.<br><br>MATTHEW BEVIN, Governor of Kentucky, in his official capacity; VICKIE YATES BROWN GLISSON, Secretary, Cabinet for Health and Family Services, in her official capacity,<br><br>        Defendants. | Case No. 3:17-cv-00189-GNS |

**PLANNED PARENTHOOD OF INDIANA AND KENTUCKY'S MOTION FOR ORDER TO SHOW CAUSE WHY DEFENDANTS SHOULD NOT BE HELD IN CONTEMPT**

1

## I.      INTRODUCTION

This motion arises from Defendants' continued enforcement of Kentucky's unconstitutional abortion clinic licensing regulations.  In April 2017, Defendant Glisson (the former Secretary of CHFS) knowingly violated this Court's preliminary injunction order by enforcing the subject regulations against Planned Parenthood.  Glisson's successor as CHFS Secretary, Andrew Meier, continues to violate the Court's orders to this day; even after the Court's entry of judgment and a permanent injunction enjoining enforcement of the subject statutes, Meier continues to rely on Glisson's April 2017 denial order as a bar to granting Planned Parenthood an abortion facility license.  But Glisson's denial order is unconstitutional, and when she signed it, this Court had already issued a temporary restraining order precluding her from enforcing the subject regulations.

Planned Parenthood attempted to avoid the necessity of this motion, but Defendants have made it clear that they intend to continue relying on Glisson's April 2017 denial order and engaging in procedural gamesmanship so as to prolong the constitutional injury that this Court's permanent injunction is designed to abate.  Meier's position is that Planned Parenthood needs to go back to square one and restart the licensure process.  Meier's reason is obvious: Defendants intend to continue delaying and obstructing Planned Parenthood's licensure, which is why Defendants rejected Planned Parenthood's proposed compromise that would have avoided the necessity of this motion.[1]  Given other recent developments in the Commonwealth, there can be no doubt that Defendants are attempting to eliminate access to abortion in Kentucky and will do

---

[1] Although Planned Parenthood disagrees with Defendants' assertion that a new license application is required, in an attempt to avoid the necessity of Court intervention, Planned Parenthood offered to file a new application if CHFS would agree to act promptly on it.  Counsel for the Governor and Meier declined this proposal.

everything possible to avoid granting Planned Parenthood an abortion facility license, new application or not.[2]

Court intervention is required to bring Defendants into compliance with the Court's orders and prevent ongoing constitutional injury to Planned Parenthood and its patients.

## II.   FACTUAL BACKGROUND

Planned Parenthood is a non-profit healthcare provider which has been operating in Louisville since 1933.  ECF No. 168 at 5.  At all times relevant, Planned Parenthood has provided essential services to Kentucky residents including cancer screening, pregnancy testing, reproductive health education, and provision of contraception, as well as testing, treatment, and vaccinations for sexually transmitted infections.  *Id.*

### A.   Defendants Repeated Attempts to Obstruct Planned Parenthood's License Application

On November 19, 2015, Planned Parenthood filed an application with Kentucky's Cabinet for Health and Family Services ("CHFS") seeking a license to perform abortions.  *Id.* at 7.  Just a few weeks later, on December 7, 2015, Defendant Mathew Bevin was inaugurated as Governor of Kentucky.  Trial Tr. vol. 3B at 70:16-24 (S. Davis).  Governor Bevin is an outspoken opponent of abortion rights who promised during his gubernatorial campaign to rid Kentucky of the "scourge" of abortion.  Sheryl Gay Stolberg, *Legal Fight Could Make Kentucky Only State With No Abortion Clinic*, N.Y. TIMES, May 2, 2017.[3]  The timeline of events since Planned Parenthood filed its

---

[2] Pursuant to Fed. R. Evid. 201, Planned Parenthood requests judicial notice of the temporary restraining order issued on March 15, 2019 against Defendant Meier (and those acting in concert with him) prohibiting enforcement of Senate Bill 9, which would "effectively ban the vast majority of abortions in the Commonwealth of Kentucky."  *EMW Women's Surgical Cetner P.S.C. et al., v. Andrew G. Beshear, et al.*, W.D. Kentucky Case No.: 3:19-cv-00178-DJH, ECF No. 14 at 3.

[3] Available at https://www.nytimes.com/2017/05/02/us/kentucky-abortion-clinic.html.

license application shows that Defendants will stop at nothing in their efforts to prevent Planned

Parenthood from providing abortions in Kentucky:

- CHFS initially informed Planned Parenthood that the transport and transfer agreements it submitted with its application were acceptable and compliant with Kentucky law, placing Planned Parenthood in the queue for a licensure inspection survey.  ECF No. 168 at 6-7.  But that inspection never came.  Instead, CHFS's tune changed dramatically once Governor Bevin's staff got involved.

- Shortly after Bevin's inauguration, Defendant Glisson was informed that she should consult with Governor Bevin's lawyer, Steven Pitt, before signing any abortion facility licenses.  Bilby Dep. 22:1-8, ECF No. 138-1.[4]  Around the same time, Bevin's CHFS Chief of Staff Steven Davis paid an unsolicited personal visit to the Inspector General's office and asked to review Planned Parenthood's entire licensure application file.  Trial Tr. vol. 3B at 63:4-65:10 (S. Davis).  Davis ultimately instructed CHFS's acting Inspector General to send Planned Parenthood a deficiency letter, which Davis himself drafted, about the purported "deficiencies" with its transfer and transport agreements.  Trial Tr. vol. 1C at 71:10-22 (S. Hold); Pls.' Trial Ex. PPINK-PX 4.

- Evidence adduced at trial clearly establishes that all of these "deficiencies" were unprecedented and pretextual, and that Planned Parenthood's application received an unprecedented and unusual level of scrutiny.  Trial Tr. vol. 2B at 10:22-12:22 (R. Silverthorn); Pls.' Trial Ex. PPINK-PX 252; ECF NO. 168 at 9 (noting that the record supports Planned Parenthood's assertions about the extraordinary involvement of Governor Bevin and his cadre in what would ordinarily be department-level review of abortion clinic licensure issues).

- After receiving CHFS's deficiency letter, Planned Parenthood obtained new transport and transfer agreements.  Planned Parenthood submitted its new agreements to CHFS on June 2, 2016.  Fact Stipulation ¶ 18, ECF No. 105; Pls.' Trial Ex. PPINK-PX 12, PPINK-PX 7.  Three weeks later, the University of Louisville Hospital abruptly canceled its transfer agreement with Planned Parenthood.  The perceived influence of the Governor's office drove the cancellation: the cancellation followed a meeting between a University of Louisville executive and Pitt, and post-cancellation executive management from University of Louisville drove to Frankfort to tell Pitt in person because she considered him a "stakeholder" in the decision.  ECF No. 168 at 10.

- Despite its efforts, Planned Parenthood was unable to obtain another transfer agreement with a hospital in Louisville.  Planned Parenthood then executed two new transfer agreements with the University of Kentucky Hospital in Lexington and Clark

---

[4] Defendant Glisson withheld information about this meeting when asked under oath about the extent of her communications with the Governor's Office regarding Planned Parenthood's licensure.  Glisson Dep. 72:3-75:1, ECF No. 140-1.

Memorial Hospital just across the Ohio River from Louisville, in Indiana.  Trial Tr. vol. 3A at 27:19-24 (P. Stauffer); Pls.' Trial Ex. PPINK-PX 10.  Planned Parenthood submitted these agreements to CHFS on February 9, 2016.

- On September 9, 2016, the Cabinet again denied Planned Parenthood's license application based solely on purportedly deficient transfer and transport agreements. This time, though, the Cabinet cited new problems, including complaints about the required content of transfer agreements, none of which were based on language of either the statute or the implementing regulation then in effect.  Pls.' Trial Ex. PPINK-PX 14.  Planned Parenthood contested the second denial of its licensure application in an administrative hearing before the Cabinet.  Fact Stipulation ¶ 31, ECF No. 105.  Like the proceedings leading up to CHFS's initial denial of Planned Parenthood's license application, the administrative appeal of CHFS's denial was also marred by procedural irregularities and improprieties.[5]

## B.   Defendants' Attempt Revoke EMW's License

In the meantime, in the midst of litigating Planned Parenthood's administrative appeal of its licensure denial, CHFS realized it had a problem: it had approved EMW's abortion facility license despite the fact that its transport and transfer agreements had the same purported deficiencies as Planned Parenthood's initial agreements.  ECF Nos. 43 ¶ 11, 47-5; Pls.' Trial Exs. EMW-PX 25, EMW-PX 33; Trial Tr. vol. 2A at 32:10-20 (R. Silverthorn).  Recognizing that CHFS's inconsistent treatment of Planned Parenthood's and EMW's transfer and transport agreements exposed CHFS's pretextual denial of Planned Parenthood's license application, and in furtherance of Defendants' single-minded campaign to make KY an abortion-free state, on March 13, 2017, CHFS sent EMW a letter purporting to automatically (and unconstitutionally) revoke EMW's abortion facility license within 10 days.  CHFS's letter stated CHFS had renewed

---

[5] The administrative appeal hearing took place January 11, 2017, consisting entirely of legal arguments based on a stipulated factual record.  Even though CHFS Hearing Officer was required to issue his recommended order within 60 days pursuant to KRS § 13B.110, CHFS' Hearing Officer *sua sponte* ordered a series of hearings in late March 2017 (over Planned Parenthood's objection) to resolve so-called "factual issues" that neither party had raised in their briefing or at the January 11, 2017 hearing.

EMW's license "in error" and argued that EMW's transfer and transport agreements were not in compliance with Kentucky law.  Pls.' Trial Ex. EMW-PX027.  CHFS's attempt to revoke EMW's license prompted EMW to file this lawsuit.

### C.    Defendants' Contempt of the Court's March 31, 2017 TRO and Preliminary Injunction

On March 31, 2017, this Court entered a temporary restraining order ("TRO") pursuant to Fed. R. Civ. P. 65 enjoining the enforcement of KRS 216B.0435 and 902 KAR 20:360 Section 10. (TRO 3-4, ECF No. 6).  By agreement of the parties, the Court later transformed the TRO into a Preliminary Injunction pending the entry of a final judgment in this action.  (Order 1, ECF No. 16).  Thus, the terms of the Court's injunction were in place from March 31, 2017 until the Court entered judgment on September 28, 2018.  The Court's TRO and injunction provided in pertinent part as follows:

> Defendant Vicky Yates Brown Glisson and all those acting in concert with her are TEMPORARILY ENJOINED from enforcing, attempting to enforce, threatening to enforce, or otherwise requiring compliance with KRS 216B.0435 and 902 KAR 20:360, Section 10.

ECF No. 6 at 4.

Despite the definite and specific language of the Court's TRO and Preliminary Injunction, on April 20, 2017, CHFS's hearing officer—acting pursuant to the authority vested in him by the executive branch, CHFS, and Defendant Glisson—issued an order recommending enforcement of KRS 216B.0435 and 902 KAR 20:360 Section 10 to deny Planned Parenthood's licensure application.  Declaration of Michael Abate ("Abate Decl.") Ex. 1.  On July 19, 2017, in wholesale defiance of the Court's injunction, Defendant Glisson personally signed a final denial order adopting the recommended order denying Planned Parenthood's license application on the basis

of the enjoined statutes and regulations: KRS 216B.0435 and 902 KAR 20:360 Section 10.  Abate

Decl., Ex. 2.

    **D.**       **Defendants' Contempt of the Court's Preliminary and Permanent Injunctions**

On September 18, 2018, the Court issued findings of fact and conclusions of law holding

that KRS 216B.0435 and its implementing regulations are unconstitutional, facially and as

applied.  ECF No. 168.  That same day, the Court entered judgement in Plaintiffs' favor and

imposed a permanent injunction providing in pertinent part as follows:

> Defendants and their officers, agents, and employees, and those persons in active
> in concert or participation with Defendants who receive actual notice of this
> Judgment, are PERMANENTLY ENJOINED and RESTRAINED from enforcing,
> attempting to enforce, threatening to enforce, or otherwise requiring compliance
> with KRS 216B.0435 and 902 KAR 20:360 Section 10.

ECF No. 170.

On October 31, 2018, Planned Parenthood's counsel sent a letter to CHFS requesting that

Planned Parenthood be placed back in the queue for a site inspection.  Abate Decl., Ex. 3.

Planned Parenthood's October 31, 2018 letter advised CHFS that its July 18, 2017 order denying

Planned Parenthood's license application based on KRS 216B.0435 and its implementing

regulations violated the Court's preliminary injunction.  Planned Parenthood's letter further

advised CHFS that the Court's permanent injunction permanently enjoined CHFS from further

enforcing KRS 216B.0435 and 902 KAR 20:360, § 10, and that the sole basis for the denial of

Planned Parenthood's license application was constitutionally invalid.

On November 28, 2018, CHFS responded in writing to Planned Parenthood's letter by

stating that the CHFS denial order was final and subjected Planned Parenthood's license

application to res judicata on the issue of the constitutionality of CHFS's denial of Planned

Parenthood's application, citing *Herrera v. Churchill McGee, LLC*, 680 F.3d 539, 547 (6th Cir.

2012), for this proposition.  Abate Decl., Ex. 4.  In other words, CHFS's position was that its administrative denial order trumps this Court's judgment and permanent injunction prohibiting enforcement of the subject regulations.  CHFS stated that Planned Parenthood's only recourse would be to go back to square one and file a new license application.

Planned Parenthood responded to CHFS's res judicata argument by letter dated December 11, 2018.  Abate Decl, Ex. 5.  Planned Parenthood's December 11, 2018 letter advised CHFS that its unconstitutional and contemptuous final order denying Planned Parenthood's application could not have any preclusive effect under either Kentucky or federal law.  Planned Parenthood asked CHFS to conform its conduct to the Court's permanent injunction and further advised CHFS that Planned Parenthood was considering filing a motion for an order to show cause why Defendants should not be held in contempt of this Court's orders.  However, in an effort to avoid motion practice, Planned Parenthood proposed a compromise as follows:

> [Planned Parenthood] will agree to submit a new licensure application if the Cabinet will agree to promptly: (1) review it; (2) allow PPINK an opportunity to correct any purported deficiencies in the application; (3) schedule an inspection; and (4) render a final decision on the application. We see no reason why the Cabinet cannot comply with the first three steps within 30 days of receipt of an application, with an inspection and final decision to come in the 30 days following that. If the Cabinet will commit to acting within this timeframe, PPINK will forgo a motion to show cause at this time and will promptly submit a new application.

*Id*.

CHFS rejected Planned Parenthood's proposed compromise in a letter dated December 21, 2018.  Abate Decl., Ex. 6.  CHFS's December 21, 2018 letter reiterated CHFS's position that its Final Order precluded any further action on Planned Parenthood's license application.  CHFS refused to agree to act promptly on any subsequent license application by Planned Parenthood, even though the sole reason for its prior denial was statutes and regulations that are now permanently enjoined.

Just before midnight on January 30, 2019, Defendants filed their opening appellate brief in the Sixth Circuit. Defendants have never moved for a stay of the Court's injunction. Instead, Defendants have taken the liberty of simply ignoring the Court's injunctions and judgment; they have effectively granted themselves a stay by refusing to comply with the Court's orders.

## III.    LEGAL STANDARD

"Federal courts have broad contempt power, which exists for the 'preservation of order in judicial proceedings, and to the enforcement of the judgments, orders, and writs of the courts.'" *Brown v. City of Upper Arlington*, 637 F.3d 668, 671 (6th Cir. 2011) (quoting *Young v. U.S. ex rel. Vuitton et Fils S.A.,* 481 U.S. 787, 798 (1987)). Pendency of an appeal does not deprive a district court of its power to supervise its judgment and enforce its order through civil contempt proceedings. *Island Creek Coal Sales Co. v. City of Gainesville*, 764 F.2d 437, 440 (6th Cir. 1985); *Brown*, 637 F.3d at 673 (citing *Hovey v. McDonald,* 109 U.S. 150, 161 (1883) ("[A]n appeal from a decree granting, refusing, or dissolving an injunction does not disturb its operative effect.")).

"A party may be found in contempt if the petitioner shows that the respondent 'violate[d] a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order.'" *Gnesys, Inc. v. Greene*, 437 F.3d 482, 493 (6th Cir. 2005) (citation omitted). The burden is on the petitioner to "prove by clear and convincing evidence that the respondent violated the court's prior order." *Id*. (citing *Glover v. Johnson*, 934 F.2d 703, 707 (6th Cir. 1991)). The standard is whether "the defendants took all reasonable steps within their power to comply with the court's order, which includes whether the defendants have marshal[ed] their own resources, assert[ed] their high authority, and demand[ed]

the results needed from subordinate persons and agencies in order to effectuate the course of action required by the [court's order]." *Id.* (quotations and citation omitted).

"The district court has inherent authority to fashion the remedy for contumacious conduct." *United States v. Conces*, 507 F.3d 1028, 1043-1044 (6th Cir. 2007) (citation omitted). Due process requires only notice and an opportunity to be heard before imposition of civil contempt sanctions. *Id.*

## IV.   ARGUMENT

The record demonstrates Defendants' clear pattern of intentional conduct designed to unconstitutionally deny Planned Parenthood an abortion facility license.  Defendants' pattern of conduct continued in the face of the Court's TRO and preliminary injunction and persists to this day, despite the Court's judgment and permanent injunction.  Absent judicial relief, Defendants will continue to flout the Court's orders and inflict constitutional injury on Planned Parenthood and its patients by continuing to enforce unconstitutional statutes and regulations under the guise of "res judicata."

The party moving for a contempt finding has the initial burden of showing disobedience of a "definite and specific" order.  *Gascho v. Glob. Fitness Holdings, LLC*, 875 F.3d 795, 800 (6th Cir. 2017), *reh'g denied* (Dec. 21, 2017), *cert. denied*, 138 S. Ct. 2576 (2018) (citation omitted). If the movant carries its burden, "the onus shifts to the opposing party to demonstrate that it was unable to comply with the court's order."  *Id.*

Here, the Court's orders prohibiting Defendants from "enforcing, attempting to enforce, threatening to enforce, or otherwise requiring compliance with KRS 216B.0435 and 902 KAR 20:360, Section 10" (ECF No. 6 at 4, ECF No. 170) are, without question, "specific and definite" orders sufficient to support a contempt finding.  The Court's unequivocal orders provide

10

"specific detail" about what conduct they prohibit, are not "too vague to be understood," and were not contingent on any future event. *See Gascho*, 875 F.3d at 801; *compare In re Nicole Gas Prod., Ltd.,* 502 B.R. 508, 510-511 (Bankr. S.D. Ohio 2013) (holding that 11 U.S.C. § 362, which prohibits inter alia "the enforcement, against the debtor or against property of the estate, of a judgment" is "exactly the kind of definite and specific order of the court contemplated by the Sixth Circuit"). There is simply "nothing inherently unfamiliar or indefinite in the Court's instruction." *United States v. Koubriti*, 305 F. Supp. 2d 723, 743 (E.D. Mich. 2003). Moreover, Defendants clearly understood the meaning of the Court's TRO, as they complied with it as to EMW and deliberately consented to conversion of the TRO into an identically-worded preliminary injunction, without any indication of confusion about its import. *See id*. at 743-44.

When Defendant Glisson signed the final denial order denying Planned Parenthood's license application on the basis of KRS 216B.0435 and 902 KAR 20:360, § 10 on July 19, 2017, she knowingly violated the Court's definite and specific order enjoining CHFS from "enforcing, attempting to enforce, threatening to enforce, or otherwise requiring compliance with KRS 216B.0435 and 902 KAR 20:360, Section 10." Likewise, by continuing to enforce Glisson's contumacious denial order against Planned Parenthood as a bar to licensure, Secretary Meier and those acting in concert with him are violating this Court's permanent injunction.

The sole reason Secretary Meier has given for refusing to comply with this Court's orders is the argument that "res judicata" applies, even though Planned Parenthood's administrative appeal did not involve any of the constitutional issues litigated in this case. *See. e.g., Waldridge v. Homeservices of Ky., Inc.,* 384 S.W.3d 165, 169 (Ky. Ct. App. 2011) (Kentucky res judicta only applies to issues that were actually litigated). Indeed, Defendants raised the same res judicata argument before this Court, citing the very same case they point to in their letter, but the

Court was not persuaded.  *See* ECF No. 156 at 14 (arguing that Planned Parenthood's claims in this action are barred by *res judicata* due to its failure to raise these claims in an appeal from the administrative order and citing *Herrera*, 680 F.3d at 547 for the proposition).  Defendants cannot ignore the Court's order and unilaterally decide that res judicata does apply.  In any event, Defendants' res judicata argument and feigned powerlessness to correct their misconduct are no defenses to a contempt citation, because in order to show impossibility of compliance, Defendants have the burden to demonstrate that (1) they were unable to comply with the court's order, (2) their inability to comply was not self-induced, and (3) that they took "all reasonable steps" to comply.  *Gascho*, 875 F.3d at 802.  Defendants cannot satisfy any of these burdens on this record.

## V.       CONCLUSION

For the foregoing reasons, Planned Parenthood respectfully requests and order to show cause why Defendants should not be held in contempt.

Dated:  March 21, 2019___                         ORRICK HERRINGTON & SUTCLIFFE LLP


                                                  ___*/s/ Karen Johnson-McKewan*___
                                                  KAREN G. JOHNSON-MCKEWAN

                                                  Casey L. Hinkle
                                                  James E. McGhee, III
                                                  Michael Abate
                                                  710 West Main Street
                                                  Fourth Floor
                                                  Louisville KY 40202
                                                  Telephone:  (502) 416-1636
                                                  Telephone:  (502) 416-1634
                                                  chinkle@kplouisville.com
                                                  jmcghee@kplouisville.com
                                                  mabate@kplouisville.com

                                                  Karen G. Johnson-McKewan (*Pro Hac Vice*)
                                                  **Orrick, Herrington & Sutcliffe LLP**
                                                  The Orrick Building
                                                  405 Howard Street
                                                  San Francisco, California  94105-2669
                                                  Telephone:  (415) 773-5700
                                                  kjohnson-mckewan@orrick.com

                                                  Lisa T. Simpson (*Pro Hac Vice*)
                                                  **Orrick, Herrington & Sutcliffe LLP**
                                                  51 West 52nd Street
                                                  New York, NY 10019
                                                  Telephone:  (212) 506 3767
                                                  lsimpson@orrick.com

                                                  Carrie Y. Flaxman (*Pro Hac Vice*)
                                                  **Planned Parenthood Federation of America**
                                                  1110 Vermont Avenue, NW, Suite 300
                                                  Washington, D.C. 20005
                                                  Telephone:  (202) 973-4800
                                                  carrie.flaxman@ppfa.org


                                                  *Counsel for Planned Parenthood of Indiana and
                                                  Kentucky, Inc.*

## CERTIFICATE OF SERVICE

On March 21, 2019, a true and correct copy of the foregoing document was sent the Court's

ECF system, and via email, to the following:

Brigitte A. Amiri
Elizabeth K. Watson
Jennifer E. Dalven
**ACLU Foundation**
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: (212) 519-7897
Telephone: (212) 284-7351
Telephone: (212) 549- 2641
bamiri@aclu.org
ewatson@aclu.org
jdalven@aclu.org

Donald L. Cox
John D. Cox
**Lynch, Cox, Gilman & Goodman, P.S.C.**
500 W.Jefferson Street, Suite 2100
Louisville, KY 40202
Telephone: (502) 589-4215
doncox@lcgandm.com
jcox@lcgandm.com

Heather L. Gatnarek
William E. Sharp
**ACLU of Kentucky Foundation, Inc.**
315 Guthrie Green Street, Suite 300
Louisville, KY 40202-3820
Telephone: (502) 581-9746
heather@aclu-ky.org
sharp@aclu-ky.org

*Counsel for EMW Women's Surgical Center,*
*P.S.C. and Ernest Marshall, M.D.*

Catherine E. York
Jennifer Wolsing
Justin D. Clark
**Cabinet for Health & Family Services**
275 E. Main Street, 5WB
Frankfort, KY 40621
Telephone: (502) 564-7905
Telephone: (502) 564-7042
catherine.york@ky.gov
Jennifer.Wolsing@ky.gov
JD.Clark@ky.gov

M. Stephen Pitt
S. Chad Meredith
**Office of the Governor**
700 Capitol Avenue, Suite 100
Frankfort, KY 40601
Telephone: (502) 564-2611
steve.pitt@ky.gov
chad.meredith@ky.gov

*Counsel for Vicky Yates Brown Glisson*
*in her official capacity as Secretary of Kentucky's*
*Cabinet for Health and Family Services*

Date:  March 21, 2019

ORRICK HERRINGTON & SUTCLIFFE LLP

*/S/  Karen Johnson-McKewan*
KAREN G. JOHNSON-MCKEWAN