UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| EMW WOMEN'S SURGICAL CENTER, P.S.C., on behalf of itself, its staff, and its patients; and ERNEST MARSHALL, M.D., on behalf of himself and his patients,<br><br>Plaintiffs,<br><br>and<br><br>PLANNED PARENTHOOD OF INDIANA AND KENTUCKY, INC., on behalf of itself, its staff, and its patients,<br><br>Intervenor-Plaintiff,<br><br>v.<br><br>MATTHEW BEVIN, Governor of Kentucky, in his official capacity; ADAM MEIER, Secretary, Cabinet for Health and Family Services, in his official capacity,<br><br>Defendants. | Case No. 3:17-cv-00189-GNS |

**PLANNED PARENTHOOD OF INDIANA AND KENTUCKY'S REPLY IN FURTHER SUPPORT OF ITS MOTION FOR ORDER TO SHOW CAUSE WHY DEFENDANTS SHOULD NOT BE HELD IN CONTEMPT**

**I.  INTRODUCTION**

Defendants have made clear they will stop at nothing to block Planned Parenthood of Indiana and Kentucky ("Planned Parenthood") from providing abortions. For over three years, Defendants have thwarted, again and again, Planned Parenthood's efforts to obtain a license, thereby depriving Planned Parenthood's patients of their constitutional rights. The idea that Planned Parenthood is seeking "special treatment" is a farce. ECF No. 190 ("Opp.") at 7.

1

Planned Parenthood seeks only to enforce the terms of this Court's prior orders and to have its abortion license application treated fairly. Planned Parenthood attempted to avoid the necessity of this motion, including by waiting until the Court decided this case on the merits and then giving Defendants ample opportunity to conform their conduct to this Court's permanent injunction. Contrary to Defendants' arguments, Planned Parenthood's patience and reasonableness over the past several months does not suggest any uncertainty about the meaning of this Court's unequivocal orders enjoining Defendants "from enforcing, attempting to enforce, threatening to enforce, or otherwise requiring compliance with KRS 216B.0435 and 902 KAR 20:360, Section 10." *See e.g.*, ECF No. 6 at 4.

The *only* bases for the Cabinet for Health and Family Services' ("the Cabinet") denial of Planned Parenthood's 2015 license application were a statute and regulation that were preliminarily enjoined at the time of the denial, and that are now permanently enjoined. The denial of the 2015 license application (the "License Denial") plainly violated the unambiguous terms of this Court's temporary restraining order and preliminary injunction (hereinafter "Preliminary Injunction"), which broadly enjoined *any* enforcement of the challenged statute and regulation. Defendants' hand-waving in their Opposition about what they thought the Preliminary Injunction meant cannot alter its text, and neither the alleged "reasonableness" of their conduct nor Planned Parenthood's delay in seeking sanctions excuse their contempt.

Accordingly, the License Denial cannot be relied upon as a basis for refusing to move forward with the 2015 licensing application. None of Defendants' arguments for why they are barred from moving forward with Planned Parenthood's 2015 license application carry any weight. Indeed, Defendants are currently violating the terms of this Court's permanent injunction by continuing to rely on the enjoined statute and regulation as a basis for refusing to

2

move forward with the 2015 application.  And Defendants' complete lack of interest in coming into compliance with this Court's orders is made clear by their cryptic and evasive responses to Planned Parenthood's letters requesting that the Cabinet schedule a licensing inspection of the facility.  Abate Decl. Exs. 4 & 6, ECF Nos. 189-5 & 189-7.

Defendants claim that Planned Parenthood should just file a new license application, Opp. at 23-24, even though the *only* reason for the denial of the prior application was the statute and regulation that this Court enjoined.  But Defendants gloss over Planned Parenthood's prior offer to do just that, so long as the Cabinet was willing to agree to treat the application fairly and process it in a timely manner.  Abate Decl. Ex. 5, ECF. No. 189-6.  The Cabinet refused.  Abate Decl. Ex. 6, ECF No. 189-7.  This alone shows that Defendants have not taken all reasonable steps to comply with this Court's orders, as required to assert a valid defense to contempt.

Finally, contrary to Defendants' arguments, Planned Parenthood has not asked this Court to order the issuance of a license.  Opp. at 2.  Instead, Planned Parenthood asks this Court to use its equitable power to fashion an appropriate remedy that will bring Defendants into compliance with this Court's orders.  Planned Parenthood merely seeks to prevent Defendants from continuing to place unconstitutional roadblocks in the way of its patients' ability to access abortion services.  Court intervention is needed to ensure that Defendants do not continue to thwart Planned Parenthood's licensure based on unconstitutional laws.

## II. THE LICENSE DENIAL VIOLATED THE TERMS OF THIS COURT'S ORDERS

The Cabinet's issuance of the License Denial was in contempt:  it plainly violated a "definite and specific" order of this Court.  *Elec. Workers Pension Tr. Fund of Local Union # 58 v. Gary's Elec. Serv. Co.*, 340 F.3d 373, 379 (6th Cir. 2003).  The scope of this Court's

Preliminary Injunction, which was in effect from March 31, 2017, until September 28, 2018, is clear from its terms:

> Defendant Vicky Yates Brown Glisson and all those acting in concert with her are TEMPORARILY ENJOINED from enforcing, attempting to enforce, threatening to enforce, or otherwise requiring compliance with KRS 216B.0435 and 902 KAR 20:360, Section 10.

ECF No. 6 at 4. As required by Federal Rule of Civil Procedure 65(d), the Preliminary Injunction provides "explicit notice of precisely what conduct is outlawed." *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974). This language broadly enjoined *any* enforcement of the statute and regulations by Defendant Glisson and those acting in concert with her. Despite this clear language, on July 19, 2017, Defendant Glisson signed the License Denial denying Planned Parenthood's license application based on purported noncompliance with the enjoined statute and regulation. Abate Decl. Ex. 2, ECF No. 189-3.

Defendants argue that Planned Parenthood has taken this language "out of context," Opp. at 10, but that is not so. This is the precise language from the Preliminary Injunction detailing its scope, which "describe[s] in reasonable detail … the act or acts restrained." FRCP 65(d). The fact that this language is broad does not mean it is ambiguous or should be read more narrowly. *See Utilase, Inc. v. Williamson*, 188 F.3d 510, 1999 WL 717969, at *12 (6th Cir. 1999) (unpublished) ("Although [the preliminary injunction] may cover a broad area of information, the breadth of the injunction does not make it ambiguous."). As in *Utilase*, Defendants are improperly "attempting to limit the terms of the preliminary injunction" in ways that are "contrary to the injunction's restriction." *Id. See also Uniroyal Goodrich Tire Co. v. Hudson*, 97 F.3d 1452, 1996 WL 520789, at *6-7 (6th Cir. 1996) (unpublished) (party held in contempt for violating "plain language" of preliminary injunction and rejecting narrow interpretation of injunction's language unsupported by its text); *Gutierrez v. CogScreen, LLC*, No. 17-CV-2378-

4

JPM-TMP, 2018 WL 6499374, at *7 (W.D. Tenn. Mar. 26, 2018) (party held in contempt for violating unambiguous court order because even if the party "believed the Preliminary Injunction meant something it did not say, [] what it says is clear").

Defendants rely heavily on language in *Gascho v. Glob. Fitness Holdings, LLC*, 875 F.3d 795 (6th Cir. 2017), *reh'g denied* (Dec. 21, 2017), *cert. denied*, 138 S. Ct. 2576 (2018), but this Court's order meets *Gascho*'s requirements. The Preliminary Injunction is a "clear and unequivocal court command." *Id.* at 800. In *Gascho*, contempt sanctions were unwarranted because the relevant order was "conditioned on future events." *Id.* at 801. Here, nothing in this Court's order was conditional or contingent: it clearly prohibited *any* enforcement of the challenged statutes and regulations from the moment it was issued. While true that the Preliminary Injunction elsewhere mentioned the harm that the women of Kentucky would face if EMW was forced to shut down, ECF No. 6 at 2, Defendants have no support for their argument that this alters the scope of this Court's unambiguous order enjoining *any* enforcement of the challenged restrictions. And Defendants' artful use of brackets to suggest that this Court specifically tied its discussion of the status quo to EMW's licensure status, Opp. at 10, cannot alter the actual text of this Court's order, which does no such thing.

Faced with this unambiguous language, Defendants argue that the Preliminary Injunction cannot possibly have covered Planned Parenthood since Planned Parenthood has not previously sought to hold Defendants in contempt. But the fact that Planned Parenthood did not run to court to enforce the Preliminary Injunction as "the parties engaged in frenzied discovery to prepare in a few months for a September 2017 trial on a significant constitutional issue," Opp. at 13, does not mean this language did not cover Planned Parenthood. Instead, Planned Parenthood assumed

5

that the Defendants would come into compliance with the terms of any permanent injunction issued post-trial. Unfortunately, that is not what has happened.

Much of Defendants' opposition focuses on the purported "reasonable[ness]" of their belief that the Preliminary Injunction did not cover Planned Parenthood. Opp. at 13. But this has no bearing on the outcome because "good faith … is no defense for failure to comply with a court order enjoining certain conduct." *Peppers v. Barry*, 873 F.2d 967, 968 (6th Cir. 1989). Indeed, "[w]illfulness is not an element of civil contempt, so the intent of a party to disobey a court order is 'irrelevant to the validity of [a] contempt finding.'" *Rolex Watch U.S.A., Inc. v. Crowley*, 74 F.3d 716, 720 (6th Cir. 1996) (quoting *In re Jaques,* 761 F.2d 302, 306 (6th Cir. 1985)). A party is only required to show that the other side "had knowledge of and violated the court's order." *Id.* at 721. Defendants' intent in disobeying the Preliminary Injunction is simply "irrelevant to the validity of the contempt finding." *Id.*

Nor does Defendants' waiver argument, Opp. at 14-16, have any merit—a party does not waive its ability to seek contempt sanctions for another party's violation of a court order. Parties are required to comply with court orders; at most, a delay in seeking contempt sanctions is a factor that can be taken into account when determining the appropriate remedy. Indeed, the out-of-circuit district court cases Defendants cite find that, *despite* a party's apparent failure to enforce its rights, sanctions were still warranted. *See, e.g.*, *Rowe v. Gen. Motors Corp.*, 550 F. Supp. 214, 215-17 (N.D. Ga. 1982) (holding it was "obvious" that the court should order the defendant to "comply immediately with the decree," even though nobody had raised an issue about noncompliance for ten years, but deferring determination of monetary penalties, particularly given lack of evidence of the extent of harm to plaintiffs by noncompliance); *In re Treco*, No. 00-8137, 2001 WL 1566709, at *6-8 (Bankr. S.D.N.Y. Dec. 10, 2001) (holding that

the defendants must comply with the court order and pay plaintiffs' costs, despite the plaintiffs' "mixed signals" in consenting to the defendants' conduct).

Defendants' arguments cannot alter the plain language of the Preliminary Injunction and the necessary conclusion that the License Denial violated its terms.

### III. THE LICENSE DENIAL DOES NOT ABSOLVE DEFENDANTS FROM COMPLYING WITH THIS COURT'S ORDERS

Defendants claim that they cannot move forward with the 2015 application because of the License Denial—an order which itself violated the Preliminary Injunction—is unfounded. None of the reasons Defendants proffer withstand scrutiny.

First, Defendants argue that Planned Parenthood should have filed an appeal from the denial of its 2015 license application in state court. Opp. at 21 n.2. But requiring Planned Parenthood to file a state court appeal prior to or simultaneously with its federal suit would mean there is an exhaustion requirement for Planned Parenthood's Section 1983 claims—something the Supreme Court has expressly disavowed. *See Steffel v. Thompson*, 415 U.S. 452, 472-73 (1974) ("When federal claims are premised on 42 U.S.C. § 1983 … we have not required exhaustion of state judicial or administrative remedies, recognizing the paramount role Congress has assigned to the federal courts to protect constitutional rights"). Planned Parenthood had no obligation to raise its constitutional claims in state court before bringing them to federal court.[1]

Second, Defendants raise a new res judicata argument in their Opposition, different from what they stated previously,[2] arguing that res judicata bars Planned Parenthood from relitigating

---

[1] Indeed, Planned Parenthood explicitly notified the administrative tribunal that, pursuant to *England v. Louisiana State Board of Medical Examiners*, 375 U.S. 411 (1964), Planned Parenthood reserved its right to pursue any federal claims on the denial of its license for litigation in federal court. ECF No. 105-28 at 2 n.1.
[2] In its Dec. 21, 2018, letter to Planned Parenthood, the Cabinet claimed that *Herrera v. Churchill McGee, LLC*, 680 F.3d 539 (6th Cir. 2012), supported its decision not to move forward

7

the denial of its 2015 application. Opp. at 20-21. But that position is also wrong: res judicata is not applicable here given that it is undisputed that the laws used to deny Planned Parenthood's application were permanently enjoined as unconstitutional after the License Denial was issued.[3] *See, e.g.*, *State Farm Mut. Auto. Ins. Co. v. Duel*, 324 U.S. 154, 162 (1945) (recognizing "the general rule that res judicata is no defense where between the time of the first judgment and the second there has been an intervening decision or a change in the law creating an altered situation"); *Franklin Cty. Convention Facilities Auth. v. Am. Premier Underwriters, Inc.*, 240 F.3d 534, 550 (6th Cir. 2001) (res judicata does not apply after an intervening "substantial change in the legal climate that suggests a new understanding of the governing legal rules" (quoting 18 Charles A. Wright, Fed. Prac. & Proc. Juris. § 4425, at 253-54 (1981)); *Black v. CMT Trucking*, No. 2004-CA-001079-WC, 2005 WL 267568, at *4 (Ky. Ct. App. Feb. 4, 2005), *aff'd*, No. 2005-SC-0168-WC, 2005 WL 2679997 (Ky. Oct. 20, 2005) ("issue preclusion cannot apply" when the relevant laws have changed in between two proceedings); *Yeoman v. Commonwealth*, 983 S.W.2d 459, 465-66 (Ky. 1998) (issues litigated must be "identical" for issue preclusion to apply).

Finally, Defendants' Opposition makes a new argument—one not raised in response to Planned Parenthood's letters—that their hands are tied as to Planned Parenthood's 2015 application because Kentucky law does not allow the Cabinet to reopen a final administrative

---

with Planned Parenthood's licensing application. Abate Decl. Ex. 4, ECF No. 189-5 at 2. In that case, a federal suit was foreclosed by a prior state administrative proceeding in which the same claim—racial discrimination—had been adjudicated. *Herrera*, 680 F.3d at 542, 551. But this Court already rejected Defendants' identical res judicata argument in this case, *see* ECF No. 156 at 14, 25, and with good reason: Planned Parenthood's patients' Fourteenth Amendment undue burden claim was not raised, let alone adjudicated, in any prior proceeding. *See* ECF No. 105-28 at 2.

[3] Not even Defendants are bold enough to claim that the *permanent* injunction does not cover Planned Parenthood. Opp. at 6.

order. Opp. at 18-20. But the cases Defendants cite do not involve continued enforcement of orders applying unconstitutional regulations in the face of a federal injunction, as is the case here. Indeed, the cases cited by Defendant only analyze what a license applicant must do to get a second bite at the apple when a valid final administrative order is in place; in *Gaines v. Kentucky Occupational Safety & Health Commission*, 326 S.W.3d 818, 820 (Ky. App. 2010), for instance, the Kentucky Court of Appeal began its analysis by noting that "[n]o party contends that this order was in any way defective or void when it was entered." Here, Planned Parenthood is not asking for a second bite at the apple; instead, Planned Parenthood is arguing that the License Denial was "defective or void when it was entered"—that an order entered in contravention of a federal injunction is no final administrative order at all. Where, as here, the administrative order is void from the start, Defendants have made no showing they are unable to move forward with a licensing application.

## IV. DEFENDANTS CANNOT ASSERT A VALID DEFENSE TO CONTEMPT

For a defendant to assert a defense to contempt based on the purported impossibility of complying with a court's orders, a defendant must show: "(1) it was unable to comply with the court's order, (2) its inability to comply was not self-induced, and (3) it took 'all reasonable steps' to comply." *Gascho*, 875 F.3d at 802 (quoting *Gary's Elec. Service*, 340 F.3d at 381-83). The Defendants do not meet any of these requirements.

First, as explained *supra* Part III, the Defendants are not "unable to comply" with this Court's orders—none of the reasons cited (Planned Parenthood's failure to exhaust remedies in state court, res judicata, or a purported inability to reopen a license denial) stand up to scrutiny. Second, to the extent the Defendants are "unable to comply," that inability is "self-induced"— but for the Defendants' ignoring this Court's Preliminary Injunction, there would have been no

9

License Denial. And finally, the Defendants have *not* taken "all reasonable steps" to comply—indeed, they have refused to take any steps towards compliance. Planned Parenthood even offered to file a new application, so long as the Cabinet would agree to process it promptly, but the Cabinet refused to provide any such assurances. Thus, impossibility of compliance is not a valid defense here given the Defendants' course of conduct and unwillingness to take any steps to come into compliance.

V.      **PLANNED PARENTHOOD SEEKS ONLY FAIR AND EQUITABLE TREATMENT, BRINGING DEFENDANTS INTO COMPLIANCE WITH THIS COURT'S ORDERS**

Planned Parenthood has not asked this Court to order Defendants to issue a license nor does Planned Parenthood seek to hold Defendants in contempt for declining to automatically issue a license. Instead, Planned Parenthood has appealed to this Court's inherent equitable authority to fashion a remedy that will make Planned Parenthood's patients whole in the face of Defendants' contravention of this Court's orders. This remedy could include an order that the Cabinet move forward with the 2015 application. But if this Court determines that the License Denial somehow precludes moving forward with the 2015 application—a conclusion that is unfounded, as explained *supra* Part III—that is not the only possible remedy.

As just one example, this Court could impose strictures on the Cabinet to ensure that any new licensing application from Planned Parenthood is treated fairly. This is particularly appropriate given that Planned Parenthood was about to be inspected, the final step in the licensing process, when the Cabinet invoked the unconstitutional statute and regulations to derail Planned Parenthood's 2015 license application. The filing of a new licensure application may allow the Cabinet to indefinitely delay the review of the application or to find a pretextual reason for denial. This Court should make clear the timeline for evaluating Planned Parenthood's

licensure application and that a denial of the application for pretextual reasons would be improper.

The idea that Planned Parenthood seeks preferential "special treatment" is absurd. Opp. at 7. To recap, Planned Parenthood's license application had *been approved*, Planned Parenthood was performing abortions, and an inspection was impending, before Defendants abruptly reversed course. *See* ECF No. 189 at 4. Defendants have tried, at every turn, to thwart Planned Parenthood from obtaining a license and impede Planned Parenthood's patients from obtaining needed care; they filed a civil suit against Planned Parenthood for following written instructions from the Cabinet, pressured hospitals into canceling transfer agreements with Planned Parenthood, and passed emergency regulations specifically designed to make it impossible for Planned Parenthood to comply with the transfer- and transport-agreement requirements. *See* ECF No. 189 at 4-5; ECF No. 168 at 9-12. Making Planned Parenthood and its patients whole—placing them in the position they would have been in but for Defendants' unconstitutional actions—will require some guidelines from this Court.

Finally, even if the Court determines that Defendants should not be held in contempt, the Court should still take this opportunity to clarify the Defendants' duties and obligations under its prior orders. *See, e.g.*, *Gordon v. Dadante*, No. 1:05CV2726, 2007 WL 1656241, at *6-8 (N.D. Ohio June 6, 2007), *order vacated in part on other grounds*, No. 1:05CV2726, 2007 WL 1741272 (N.D. Ohio June 13, 2007) (declining to issue contempt sanctions "out of an abundance of caution" but clarifying its prior order and "forewarn[ing]" counsel that "any future violations of this Court's orders will be met with the severest of sanctions"). Given the Cabinet's track record of ignoring this Court's orders, such a warning would be particularly appropriate.

## VI. CONCLUSION

For the foregoing reasons, Planned Parenthood respectfully requests an order to show cause why Defendants should not be held in contempt.

Dated: April 25, 2019

ORRICK HERRINGTON & SUTCLIFFE LLP

*/s/ Karen Johnson-McKewan*
KAREN G. JOHNSON-MCKEWAN

Casey L. Hinkle
James E. McGhee, III
Michael Abate
710 West Main Street
Fourth Floor
Louisville KY 40202
Telephone: (502) 416-1636
Telephone: (502) 416-1634
chinkle@kplouisville.com
jmcghee@kplouisville.com
mabate@kplouisville.com

Karen G. Johnson-McKewan (*Pro Hac Vice*)
**Orrick, Herrington & Sutcliffe LLP**
The Orrick Building
405 Howard Street
San Francisco, California 94105-2669
Telephone: (415) 773-5700
kjohnson-mckewan@orrick.com

Lisa T. Simpson (*Pro Hac Vice*)
**Orrick, Herrington & Sutcliffe LLP**
51 West 52nd Street
New York, NY 10019
Telephone: (212) 506 3767
lsimpson@orrick.com

Carrie Y. Flaxman (*Pro Hac Vice*)
**Planned Parenthood Federation of America**
1110 Vermont Avenue, NW, Suite 300
Washington, D.C. 20005
Telephone: (202) 973-4800
carrie.flaxman@ppfa.org

*Counsel for Planned Parenthood of Indiana and Kentucky, Inc.*

**CERTIFICATE OF SERVICE**

On April 25, 2019, a true and correct copy of the foregoing document was served electronically on all parties of record via CM/ECF's notice of electronic filing:

Date: April 25, 2019                  ORRICK HERRINGTON & SUTCLIFFE LLP

                                                   /s/ *Karen Johnson-McKewan*
                                                 KAREN G. JOHNSON-MCKEWAN