UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
Louisville Division
*Electronically filed*

| | |
|---|---|
| EMW WOMEN'S SURGICAL CENTER, P.S.C., on behalf of itself, its staff, and its patients; Ernest Marshall, M.D., on behalf of himself and his patients<br><br>and<br><br>PLANNED PARENTHOOD OF INDIANA AND KENTUCKY, INC.<br><br>    *Plaintiffs*<br><br>v.<br><br>ERIC FRIEDLANDER, in his official capacity as Secretary of Kentucky's Cabinet for Health and Family Services; and ANDREW G. BESHEAR, in his official capacity as Governor of Kentucky<br><br>    *Defendants*<br><br>and<br><br>DANIEL J. CAMERON, Attorney General of the Commonwealth of Kentucky<br><br>    *Intervenor-Defendant* | Civil Action No. 3:17-cv-189-GNS |

## ATTORNEY GENERAL DANIEL CAMERON'S MOTION FOR SUMMARY JUDGMENT

Under Federal Rule of Civil Procedure 56 and Local Rule 7.1, Attorney General Daniel Cameron moves the Court to grant summary judgment on the two claims remaining in this case. No genuine issues of material fact are in dispute, and the Attorney General is entitled to judgment as a matter of law.

1

## INTRODUCTION

Only two issues remain for this Court to decide: whether Kentucky's transfer- and transport-agreement requirements amount to an improper delegation of authority and whether the applicable statute and regulation violate the Equal Protection Clause under the Fourteenth Amendment. Dispositive Sixth Circuit case law—including from the appeal of this action—supports the constitutionality of Kentucky's laws. The Court should grant summary judgment to the Attorney General on both claims.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff EMW Women's Surgical Center, P.S.C. ("EMW") and its owner Plaintiff Ernest Marshall, M.D. ("Marshall") originally challenged KRS 216B.0435 and 902 KAR 20:360 § 10 in 2017. Planned Parenthood of Indiana and Kentucky, Inc.[1] ("Planned Parenthood") intervened when it was seeking licensure for a new facility in Louisville. EMW, Marshall, and Planned Parenthood ("Plaintiffs") challenged the transfer and transport agreements required by the statute and regulation. They alleged that the requirements impose an undue burden, that the regulations are an improper delegation of authority, and that the statute and regulation violate the Fourteenth Amendment's Equal Protection Clause.[2] (Pls.' Verified Compl., DN 1; Intervenor-Pl.'s Compl., DN 46).

---

[1] On July 13, 2021, Intervenor-Plaintiff notified the Court and parties of a merger and name change to Planned Parenthood Great Northwest, Hawaii, Alaska, Indiana, Kentucky, Inc., and moved to substitute the new entity. (Intervenor-Pl.'s Notice of Name Change & Motion for Leave to Substitute Intervenor-Pl., DN 221).

[2] Plaintiffs brought additional claims, but the procedural due process claims raised by EMW (Count II) and Planned Parenthood (Count III), the Full Faith and Credit Clause and void for vagueness

2

In September 2018, this Court entered a final judgment holding the statute and regulation unconstitutional as a violation of substantive due process. (Opinion & Order, DN 168). Accordingly, the Court declined to rule on whether the laws violated the Equal Protection Clause or constituted an unlawful delegation. *(Id.* 5, n. 29).

On appeal, the Sixth Circuit held that KRS 216B.0435 and 902 KAR 20:360 § 10 do not violate Plaintiffs' substantive due process rights. *EMW Women's Surgical Ctr. P.S.C. v. Friedlander*, 978 F.3d 418, 446 (6th Cir. 2020). "Because the controlling opinion in *June Medical Services* clarified that the undue burden standard is not a balancing test," the Sixth Circuit determined it was improper to weigh the benefits against the burdens. *Id.* at 437. Instead, a court "need only consider whether [the laws] are reasonably related to a legitimate state interest and whether they impose a substantial obstacle." *Id.*

The Sixth Circuit noted that because this Court "found that it is *sometimes* necessary to transfer a patient from an abortion facility to an emergency room because of an abortion-related complication . . . one could easily see how requiring abortion facilities to have transfer and transport agreements with a local hospital is a 'rational way to correct' [the] problem." *Id.* at 439 (emphasis in original) (citing *Williamson v. Lee Optical of Oklahoma, Inc.*, 348 U.S. 483, 488 (1955)). Thus, the Sixth Circuit held that KRS 216B.0435 and 902 KAR 20:360 § 10 "are reasonably related to Kentucky's legitimate state interest in maternal health." *Id.* (internal

---

claims made by Planned Parenthood (Counts V and VI), and EMW's First Amendment retaliation claim (Count IV) were all dismissed with prejudice as waived by this Court because Plaintiffs "failed to address these claims in their pre- and post-trial filings and did not present proof on these claims at trial." (Opinion & Order 40 n. 24, (DN 168)).

3

quotations omitted). The Sixth Circuit also held that the statute and regulation do not impose a substantial obstacle based on its determination that Plaintiffs failed to make the required showing that both facilities would close if the statute and regulation were allowed to go into effect. *Id.* at 446. As a result, the Sixth Circuit vacated the permanent injunction and remanded the case to this Court for consideration of the two remaining claims, those being the equal protection and unlawful delegation claims.

## STANDARD

Summary judgment is appropriate if "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## ARGUMENT

I. **The Inspector General's ability to grant 90-day extensions means there is no impermissible delegation of authority to private parties.**

   A. *Baird* **controls, and the Sixth Circuit's opinion in this case plainly demonstrates that** *Baird***'s requirements are met.**

Plaintiffs assert that the transfer and transport agreements required by the statute and regulation unconstitutionally delegate "arbitrary and unreviewable discretion" to private parties, specifically ambulance companies and hospitals. (Pls.' Proposed Findings of Fact & Conclusions of Law 32, DN 154; Intervenor-Pl.'s Proposed Findings of Fact & Conclusions of Law 76, DN 157). But the Sixth Circuit foreclosed such a claim in *Women's Medical Professional Corp. v. Baird*, 438 F.3d 595 (6th Cir. 2006), and its opinion in this case demonstrates why *Baird* is dispositive. Namely, Kentucky's licensing scheme, like Ohio's, "contains an important feature,"

4

*id.* at 610, that negates the possibility of an improper delegation to a private party. The Inspector General holds authority to grant 90-day extensions to abortion facilities that cannot obtain transfer and transport agreements. *See* 902 KAR 20:360 § 10(5). This serves as a procedural safeguard that prevents a private party from exercising a "final veto on whether an abortion clinic is licensed." *Baird*, 438 F.3d at 610. Accordingly, Plaintiffs' improper delegation claims fail.

In *Baird*, the Sixth Circuit reviewed an Ohio law that required abortion clinics to enter into written transfer agreements with an area hospital as part of the process to obtain a license. The case involved a clinic that had trouble finding a hospital that would enter into a transfer agreement with it. *Id.* at 598. The clinic sued, claiming that the transfer-agreement requirement was an unconstitutional delegation of authority to private hospitals. *Id.* at 609. The Sixth Circuit rejected the clinic's claim because the state licensing official retained authority to waive the transfer-agreement requirement. *Id.* at 610. The "ability to grant a waiver from the transfer agreement requirement prevented the hospitals from having an unconstitutional third-party veto over [the clinic's] licensing application. Because the waiver procedure allows the state to make the final decision about whether [clinics] obtain a license, there was no impermissible delegation of authority to a third party." *Id.*

The same is true here. The Sixth Circuit's opinion in this action makes clear that the Inspector General—not any private party—retains final decision-making authority on matters related to transfer and transport agreements in Kentucky. *Friedlander*, 978 F.3d at 441–42. The Inspector General does so through the

extension-of-time process established in 902 KAR 20:360 § 10(5), which the Sixth Circuit equated to a waiver.[3] *Id.* The regulation authorizes the Inspector General to grant facilities ninety-day waivers of the transfer- and transport-agreement requirements if the facilities apply. A waiver denial is subject to administrative and judicial review, *Friedlander*, 978 F.3d at 441, and the Inspector General is presumed to act in good faith when considering a waiver request, *id.* at 442.

That the Inspector General retains final authority over whether the facilities can receive and keep a license prevents hospitals and ambulance companies from holding improper delegated authority. *See, e.g.*, *United Black Fund, Inc. v. Hampton*, 352 F. Supp. 898, 904 (D.D.C. 1972) (finding that delegations by federal agencies to private parties were not invalid if the agency or official retained final reviewing authority); *Washington ex rel. Seattle Title Tr. Co. v. Roberge*, 278 U.S. 116, 122 (1928) (invalidating a delegation that made no provision for government review of private parties' decisions). Therefore, even if the hospitals impede a facility's ability to make the required agreements, the Inspector General's ability to grant the 90-day extensions repeatedly and indefinitely prevents the hospitals from being a final veto on the facilities' licensure status. *See Baird*, 438 F.3d at 610.

---

[3] In considering whether to grant a waiver, "the Inspector General must consider (1) whether the facility is making 'a good faith effort to obtain a transfer or transport agreement,' (2) whether the facility 'can provide the same level of patient care and safety via alternative health services during any extension period,' and (3) the facility's history of regulatory compliance." *Id.* at 441 (quoting 902 KAR 20:360 § 10(5)(b)).

6

### B. Law of the case applies.

The Sixth Circuit's detailed analysis of the waiver process and the Inspector General's role in it undermines any argument that private parties have unreviewable discretion over Plaintiffs' licensure status. But the Sixth Circuit's opinion in this action does more than just undermine Plaintiffs' claims: it requires summary judgment in favor of the Attorney General due to law of the case.

"'Under the law of the case doctrine, findings made at one stage in the litigation should not be reconsidered at subsequent stages of that same litigation.'" *Burley v. Gagacki*, 834 F.3d 606, 618 (6th Cir. 2016) (quoting *Dixie Fuel Co., LLC v. Dir., Office of Workers' Comp. Programs*, 820 F.3d 833, 843 (6th Cir. 2016)); *see Moody v. Michigan Gaming Control Bd.*, 871 F.3d 420, 425 (6th Cir. 2017) (citing *Caldwell v. City of Louisville*, 200 Fed. Appx. 430, 433 (6th Cir. 2006)). The "law-of-the-case doctrine 'is intended to enforce a district court's adherence to an appellate court's judgment[.]'" *Moody*, 871 F.3d at 425 (quoting *Miller v. Maddox*, 866 F.3d 386, 390 (6th Cir. 2017)). The doctrine "applies only to issues that were actually decided, whether explicitly or by necessary implication." *Id.* (citing *Caldwell*, 200 Fed. Appx. at 433). "[T]he doctrine aims to 'maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit.'" *Edmonds v. Smith*, 922 F.3d 737, 740 (6th Cir. 2019) (quoting 18B Wright & Miller § 4478).

Plaintiffs' unlawful delegation claim can be successful only if private parties (here, hospitals and ambulance companies) hold a veto over Plaintiffs' ability to obtain a license. On appeal, the Sixth Circuit squarely held that the Inspector

7

General retains final authority over the waiver process in 902 KAR 20:360 § 10. *Friedlander*, 978 F.3d at 441–42. The Court must apply this holding as the law of the case. For that reason, there is no improper delegation of authority and the Court should enter judgment for the Attorney General on Count III of the Verified Complaint and Count IV of the Intervenor-Plaintiff's Complaint.

### C. The facts demonstrate that Plaintiffs are able to operate on the basis of the waivers.

A final note about the Plaintiffs' unlawful delegation claims. Even if such a claim were viable as a matter of law, it is no longer viable as a matter of fact. At trial, the Plaintiffs were required to show that they would "not be able to operate on the basis of waivers."[4] *Friedlander*, 978 F.3d at 442, n. 16. The Sixth Circuit plainly held that Plaintiffs failed to meet their evidentiary burden. *Id.* at 446. Moreover, Plaintiffs' facilities are currently providing abortions, which is the clearest indication that the waiver process is available and does not result in the calamitous harm claimed.

"[A] finding of futility requires more than an abortion provider's subjective belief that efforts at compliance would be futile. The provider's belief must be 'reasonabl[e],' and the reasonableness of the belief must be established by record evidence." *Id.* at 444 (second alteration in original) (citing *June Medical Services*, 140 S. Ct. 2103, 2125 (2020)). The Sixth Circuit found that nothing in the record established evidence to indicate the use of the waiver process was futile. *See id.* at 443. Planned Parenthood's focus on the potential problems that relying on the waiver

---

[4] During oral argument, Planned Parenthood conceded this was the showing they must make to demonstrate the existence of a constitutional violation. *Friedlander*, 978 F.3d at 442, n. 16.

8

could have caused if it were still attempting to raise money for the facility "has no bearing on the prospective effect" of the law and the statute. *Id*. And Marshall's "subjective belief that it would be impractical" to operate by using the waivers was not supported by any facts that would make it "objectively reasonable." *Id*. at 444.

Despite not being able to enter into transfer and transport agreements, both facilities have continued to operate and perform abortions. This is because, as Wesley Duke, Counsel for the Cabinet for Health and Family Services, indicated in the telephonic conference held by this Court on July 1, 2021, the Cabinet has been granting Plaintiffs' waiver requests. This clearly demonstrates that the improper delegation claim cannot stand. Accordingly, there is no way to proceed with this claim but to dismiss it with prejudice.

## II. The requirements placed on abortion facilities do not violate the Equal Protection Clause because they are reasonably related to the Commonwealth's interest in maternal health.

The Equal Protection Clause of the Fourteenth Amendment "prohibits discrimination by government which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference." *TriHealth, Inc. v. Bd. of Comm'rs*, 430 F.3d 783, 788 (6th Cir. 2005). Therefore, in an Equal Protection Clause analysis, the court's role is to determine the "basic validity" of the classification at issue. *Pers. Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 272 (1979) (citing *Barrett v. Indiana*, 229 U.S. 26, 29–30 (1913)).

9

### A. Rational basis is the appropriate standard of review.

Heightened scrutiny is necessary in the Equal Protection Clause context *only* if the classification burdens a fundamental right or targets a suspect class. Neither is true here, so the law enjoys a "strong presumption of validity," *Heller v. Doe*, 509 U.S. 312, 319 (1993), and rational basis is the appropriate standard of review.

*1. KRS 216B.0435 and 902 KAR 20:360 § 10 do not burden a fundamental right.*

A classification that burdens a fundamental right is reviewed under strict scrutiny. *San Antonio Sch. Dist. v. Rodriguez*, 411 U.S. 1, 16 (1973). Here, however, the Sixth Circuit has already found that KRS 216B.0435 and 902 KAR 20:360 § 10 do not impose an undue burden on the right of a woman to seek an abortion. *Friedlander*, 978 F.3d at 446. Therefore, this Court need not re-analyze whether the statute and regulation infringe on a fundamental right for the equal protection analysis. *See Greenville Women's Clinic v. Bryant*, 222 F.3d 157, 173 (4th Cir. 2000) (holding that because it had already concluded the regulation was not an undue burden on a woman's ability to choose an abortion, there was no need to analyze whether it infringed on a fundamental right for the equal protection analysis). According to the U.S. Supreme Court, "It is well-settled that where a statutory classification does not itself impinge on a right or liberty protected by the Constitution, the validity of classification must be sustained unless 'the classification rests on grounds wholly irrelevant to the achievement of [any legitimate governmental] objective.'" *Harris v. McRae*, 448 U.S. 297, 322 (1980) (alteration in original) (quoting *McGowan v. Maryland,* 366 U.S. 420, 425 (1961)). Strict scrutiny

10

is not required because the statute and regulation do not impinge on a woman's right to choose an abortion. *Friedlander*, 978 F.3d at 446.

    *2. Abortion facilities are not a suspect class.*

The presumption that the classification is valid "disappears" if the classification is based on a suspect class, *Harris*, 448 U.S. at 322, but abortion facilities are not a suspect class, *see Ondo v. City of Cleveland*, 795 F.3d 597, 608 (6th Cir. 2015) (recounting the groups for which the U.S. Supreme Court has recognized heightened scrutiny). Planned Parenthood previously asserted that a higher level of scrutiny is appropriate because "the Constitution [does not] tolerate distinctions drawn among providers on the basis of the gender of the patient served." (Intervenor-Pl.'s Proposed Findings of Fact & Conclusions of Law 79, DN 157 (citing *Feeney*, 442 U.S. at 273)). However, that assertion is an overextension of *Feeney*, which only discussed distinctions between individuals—not entities, and it ignores the Sixth Circuit's precedent on this question. *See Birth Control Ctrs. v. Reizen*, 743 F.2d 352, 358, n. 3 (6th Cir. 1984) (noting that because the classification made between free standing surgical outpatient facilities and private doctors' offices "is based neither on race nor gender, the plaintiffs' attempt to apply the reasoning of the Supreme Court in [*Feeney*] is not appropriate").[5] In *Reizen*, the Sixth Circuit noted, "[W]e are not aware of any authority that allows [plaintiff clinics] to use their patients' due process

---

[5] The Sixth Circuit also noted in *Reizen* that *Feeney* required proof of discriminatory intent. 743 F.2d at 358, n. 3. Here—as in *Reizen*—this court did not find discriminatory intent. (*See* Opinion & Order 3, DN 168 (noting the expectation of the legislature "that hospitals would readily be willing to enter into transfer agreements")).

rights as a means of elevating the standard of review for their own equal protection rights." *Id*. at 358.

Courts have continued to agree with the Sixth Circuit on this point. *See, e.g.*, *Armstrong v. Mazurek*, 906 F. Supp. 561, 568 (D. Mont. 1995) (rejecting the argument that heightened scrutiny was owed on the basis that the law affected a healthcare service "sought only by women," and applying rational basis instead) (vacated by *Armstrong v. Mazurek*, 94 F.3d 566 (9th Cir. 1996), on other grounds); *Women's Med. Ctr. of Northwest Houston*, 159 F. Supp. 2d 414, 459 (S.D. Tex. 1999) ("To the extent that the [physicians] are asserting their own equal protection rights, therefore, the court must apply rational basis review.") (affirmed in part, reversed in part by *Women's Med. Ctr. of Northwest Houston v. Bell*, 248 F.3d 411, 419 (5th Cir. 2001) (noting "the district court correctly chose to evaluate" the regulations under rational basis review)); *Whole Women's Health All. v. Hill*, 388 F. Supp. 3d 1010, 1043 (S.D. Ind. 2019). As a result, assessing the statute and regulation under heightened scrutiny for purposes of the Equal Protection Clause requires a showing that abortion facilities constitute a suspect class independent of their patients. Neither EMW nor Planned Parenthood has made such a showing here.

The Supreme Court has repeatedly explained that suspect class status is applied only when there has been a history of discrimination and prejudice. *See, e.g. Rodriguez*, 411 U.S. at 28 (observing that the "traditional indicia of suspectness" are if the class is "saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political

powerlessness as to command extraordinary protection from the majoritarian political process"). And even if a class has a history of unequal treatment, the Supreme Court has recognized that it may not always be appropriate to afford the class suspect status under the Equal Protection Clause if there are legitimate reasons the state may single out the class for regulation. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 444 (1985) (finding that legislation "singling" out the mentally disabled "for special treatment reflects the real and undeniable differences"); *see also Tucson Woman's Clinic v. Eden*, 379 F.3d 531, 545 (9th Cir. 2004) (finding that the state had "many legitimate reasons" to single out doctors who perform abortions such that it is "not appropriate to afford that class suspect status under the equal protection clause"). Perhaps most importantly, the Supreme Court has acknowledged the foundational reason for distinguishing between abortion services and other medical services. *See, e.g.*, *Harris,* 448 U.S. at 325 ("Abortion is inherently different from other medical procedures, because no other procedure involves the purposeful termination of a potential life.").

Given the collective weight of precedent, Planned Parenthood may not assert suspect class status simply because it serves women who may seek an abortion. Moreover, it has not demonstrated that abortion facilities are owed status as a suspect class on their own. Therefore, the Court need not apply a heightened standard of scrutiny in its review of Planned Parenthood's Equal Protection Clause claim.

### B. KRS 216B.0435 and 902 KAR 20:360 § 10 survive rational basis review because the Commonwealth has a rational reason for any difference in treatment.

KRS 216B.0435 and 902 KAR 20:360 § 10 survive rational basis review. Under the rational basis standard, Planned Parenthood has the burden of demonstrating that no "reasonably conceivable state of facts . . . could provide a rational basis for the classification." *FCC v. Beach Communications, Inc.*, 508 U.S. 307, 313 (1993). Stated differently, where there is a "plausible reason[]," the judicial "inquiry is at an end." *United States R.R. Ret. Bd. v. Fritz*, 449 U.S. 166, 179 (1980).

Defining a class "inevitably requires that some persons who have an almost equally strong claim to favored treatment be placed on different sides of the line," but that alone will not invalidate the classification under the Equal Protection Clause. *Beach Communications*, 508 U.S. at 315–16 (quoting *Fritz*, 449 U.S. at 179). The legislature must have discretion to determine how it will address a "perceived problem." *See id.* at 316. This discretion means that even within the same field, the legislature may regulate differently. "Evils in the same field may be of different dimensions and proportions, requiring different remedies. . . . The legislature may select one phase of one field and apply a remedy there, neglecting others. The prohibition of the Equal Protection Clause goes no further than invidious discrimination." *Williamson*, 348 U.S. at 489.

There is no invidious discrimination here. Kentucky requires various types of medical facilities to have transfer and transport agreements. For instance, an ambulatory surgical center "shall have a transfer agreement." 900 KAR 5:020

14

(incorporating by reference the 2020-2022 State Health Plan, which details the requirements related to licensure of health facilities). Similarly, an application by a facility to provide cardiac catheterization must include a "current, signed agreement for emergency transfer of patients to a collaborating tertiary hospital that has an active comprehensive cardiac surgical program within the facility." *Id*. An application for Level II special care neonatal beds must "provide documentation of a collaborative relationship with an eligible Level IV provider" and specify that the Level IV facility will consult with the applicant as to the "protocols, policies, and procedures related to [] Maternal and neonatal patient referral and transport." *Id*. These requirements—like the transfer and transport agreements required for abortion facilities—are a recognition of the Commonwealth's interest in protecting the health of its citizens. *See* KRS 216B.010 ("[T]he licensure of health facilities and health services is a means to insure that the citizens of this Commonwealth will have safe, adequate, and efficient medical care[.]").

As the Sixth Circuit noted in its decision, there was "a problem at hand for the Kentucky legislature to correct" because "it is *sometimes* necessary to transfer a patient from an abortion facility to an emergency room." *Friedlander*, 978 F.3d at 439 (emphasis in original). Therefore, the General Assembly had a rational basis for believing that transfer and transport agreements were necessary. Concern for the health of its citizens is a sufficiently "independent and legitimate legislative end" to ensure the classification was "not drawn for the purpose of disadvantaging the group burdened by the law." *Romer v. Evans*, 517 U.S. 620, 633 (1996).

15

Planned Parenthood has not demonstrated that there was any invidious discrimination in the Commonwealth's decision to enact the statute and promulgate the regulation; therefore, the statute and regulation withstand rational basis review and do not violate the Equal Protection Clause. Again, all the Court needs to do—indeed, is obliged to do—is apply the law of the case. The Sixth Circuit has already held that "KRS § 216B.0435 and 902 KAR 20:360 § 10 are reasonably related to Kentucky's legitimate interest in maternal health." *Friedlander*, 978 F.3d at 439 (internal quotations omitted). For these reasons, the Court should enter judgment in favor of the Attorney General on Count II of the Intervenor-Plaintiff's Complaint.

**III. The Court should dismiss the unlawful delegation and equal protection claims without delay for the reasons stated above. If it does not, the Court should dismiss because abortion is not a constitutional right.**

The purported right to an abortion created by *Roe v. Wade*, 410 U.S. 113 (1973), lacks any basis in the Constitution or this nation's historical foundation. Rather, abortion regulation is a matter that the Constitution entrusts to the States. *See* U.S. Const. amend. X. *Roe* and its progeny, which consistently change applicable rules and tests in abortion cases, are not entitled to *stare decisis*, should be revisited, and should be overruled.

The Attorney General recognizes that only the Supreme Court can overrule *Roe*, and he obviously does not expect this Court to flout Supreme Court precedent. But *Roe*'s viability is currently before the Supreme Court in *Dobbs v. Jackson Women's Health Organization*, No. 19-1392, which will be argued this fall. The question presented in *Dobbs* is "[w]hether all pre-viability prohibitions on elective

16

abortions are unconstitutional," and Mississippi is asking the Supreme Court to overrule *Roe* and *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833 (1992). (*See generally Dobbs*, No. 19-19-1392, Brief for Petitioners).

The Kentucky General Assembly has already exercised Kentucky's sovereign authority to regulate abortion in a manner that takes into consideration maternal health, a child's right to life and to be free from pain, and the integrity of the medical profession, among other things. One way it has done this is through transfer- and transport-agreement requirements.

In the event *Dobbs* overrules *Roe* and *Casey* or sheds new light on applicable tests—and even in the event it does not—the Attorney General explicitly preserves the argument that abortion regulation is a matter left to the States, and no level of heightened scrutiny should apply. KRS 216B.0435 and 902 KAR 20:360 § 10 are constitutional.

## **CONCLUSION**

The court should grant summary judgment on Plaintiffs' improper delegation claim and Equal Protection Clause claim, and this case should be dismissed with prejudice pursuant to Fed. R. Civ. P. 56.

    Respectfully submitted,

    /s/ Barry L. Dunn
    Barry L. Dunn (Bar No. 93787)
    Victor B. Maddox (Bar No. 43095)
    Carmine G. Iaccarino (Bar No. 93838)
    Office of the Attorney General
    700 Capital Avenue, Suite 118
    Frankfort, Kentucky 40601
    Phone: (502) 696-5300
    Barry.Dunn@ky.gov

Victor.Maddox@ky.gov
Carmine.Iaccarino@ky.gov

*Counsel for Attorney General Daniel Cameron*

## CERTIFICATE OF SERVICE

I certify that on July 30, 2021, the above document was filed with the CM/ECF filing system, which electronically served a copy to all counsel of record.

/s/ Barry L. Dunn
*Counsel for Attorney General Daniel Cameron*